BEACON NATIONAL INSURANCE COMPANY et al., Appellants,

v.

TEXAS STATE BOARD OF INSURANCE et al., Appellees.

No. 12967.

Court of Civil Appeals of Texas, Austin.

May 30, 1979.

Rehearing Denied June 20, 1979.

---

Joe E. Shaddock, Wichita Falls, for appellants.

Mark White, Atty. Gen., Catherine Fryer, Asst. Atty. Gen., Austin, for State Bd. of Ins.

Mary Joe Carroll, Clark, Thomas, Winters & Shapiro, Austin, for Texas Catastrophe Property Ins. Assn.

PHILLIPS, Chief Justice.

Appellants, Beacon National Insurance Company and First Preferred Insurance Company, contend that the Texas Catastrophe Property Insurance Association (commonly referred to as the Cat Pool) is not being operated fairly and in a nondiscriminatory manner. Appellants have been unsuccessful before the Cat Pool Board of Directors and in appeals to the State Board of Insurance and district court of Travis County. Appellants have now perfected their appeal to this Court.

We affirm.

The Cat Pool was created by Texas Insurance Code Ann. art. 21.49 (Supp.1978). Its membership consists "of all property insurers authorized to transact property insurance in this State, except those companies that are prevented by law from writing coverages available through the pool on a Statewide basis." *Id.* § 4(a). The purpose of the enactment is to provide insurance for property owners in the "Catastrophe Area" of Texas where hurricane risk is great. The State Board of Insurance has determined that the catastrophe area is comprised of the first tier of counties along the Gulf coast.

Member insurance companies are assigned a percentage share of expenses, profits and losses of insurance written by the Cat Pool based upon the total amount of premiums written by the member in Texas. Members of the Cat Pool are "entitled to receive credit for similar insurance voluntarily written in the area designated by the Board [the Gulf coast counties] and its participation in the writings in the Association shall be reduced in accordance with the provisions of the plan of operation." *Id.* § 5(c).

The plan of operation of the Cat Pool was required by the statute to be prepared by a temporary board of directors of the Pool, appointed by the State Board of Insurance. The permanent board of directors is elected in the manner set out in the plan of operation. Each one of five directors is chosen from one of five different insurance organizations. The remaining four directors are elected at large from the overall membership of the Cat Pool. It is important to

note that the plan of operation of the Cat Pool was approved by the State Board of Insurance.

■ Appellants' complaint in this case is that the Cat Pool is being administered unfairly and discriminatorily. It is appellants' contention that this is shown by the fact that the very large member companies that have representatives on the board of directors have almost a zero percent participation in Cat Pool insurance writings. The reason these companies have such a low percentage share is because they avail themselves of the authorized credit for insurance voluntarily written in the catastrophe area. Appellants point to two actions that would remedy the alleged discriminatory operation of the Cat Pool, namely, reduction of the size of the catastrophe area or a reduction of the credit for voluntarily written insurance in the catastrophe area to something less than a dollar-for-dollar credit.

"Catastrophe Area" is defined to mean a city or county in which windstorm and hail insurance "is not reasonably available to a substantial number of owners of insurable property . . . ." Tex.Rev.Civ.Stat. Ann. art. 21.49 § 3(h) (Supp.1978). This determination is made by the State Board of Insurance, not the Cat Pool or its board of directors. In addition, the designation of the catastrophe area may be revoked by the State Board of Insurance. The Cat Pool may also make a determination that "insurance is no longer reasonably unavailable" and it may then request the State Board to revoke the designation. *Id.* Appellants contend that the Cat Pool's failure to make such a request amounts to arbitrary and discriminatory conduct with respect to appellants. The only evidence offered by appellants to show that property insurance in any cities or counties within the catastrophe area is now readily available is the fact that Nueces and Jefferson Counties together account for only twenty percent of the writings of the Pool.

The basis for appellants' complaint is, apparently, that the larger insurance companies, which are represented on the board of

directors of the Cat Pool, are able to write many more voluntary insurance policies in the catastrophe area than are appellants. These larger insurers are thereby able to select better property risks and at the same time reduce participation in the Cat Pool with its poorer risk policies. Appellants' argument is that the Cat Pool board of directors is acting unfairly by not taking steps to offset this advantage of the larger insurance companies.

It is obvious that the advantage results from the statutorily authorized credit for voluntary insurance. Appellants insist that they are precluded from benefiting from the credit because mortgage lenders will not accept insurance written by appellants. This is so, they claim, because their financial rating is not as high as the other larger insurers. We do not believe this of itself is sufficient to prove that the Cat Pool is being operated unfairly. The large insurers' representatives on the Cat Pool board of directors are not obligated to make changes in the Cat Pool's operation simply because they are able to benefit from the credit provision of the statute.

Furthermore, appellants' witnesses testified that mortgage lenders in the catastrophe area do in fact accept insurance written by appellants. An independent insurance agent in Galveston County could think of only one mortgagee who refused to approve appellants. A Beaumont agent testified that she did a substantial volume of business for appellants. A director of Beacon National stated that mortgage lenders refuse to use appellants' policies but that the problem is statewide and not limited to the catastrophe area. Finally, the executive vice-president of appellants testified that probably fifty percent of mortgage lenders would accept appellants' policies in the catastrophe area.

We hold that there was substantial evidence to uphold the agency action.

Appellants contend in their second point of error that the trial court erred in holding the substantial evidence rule applied in this case. The contention is based primarily on the fact that the manner of review provided

by statute, Tex.Ins.Code Ann. art. 1.04(f) (1963), is by trial *de novo* and the substantial evidence rule, applied by the trial court, was expressly inapplicable. Resolution of this issue involves consideration of the doctrine of separation of powers.

The Texas Constitution provides that the powers of government shall be divided into three distinct departments: legislative, executive and judicial, and that except in instances expressly permitted by the Constitution, "no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others . . . ." Tex. Const. art. II, § 1. Pursuant to this provision, legislative acts requiring judicial review of legislative or executive determinations of agencies by way of a trial *de novo* have been declared unconstitutional. *Key Western Life Insurance Company v. State Board of Insurance,* 163 Tex. 11, 350 S.W.2d 839 (1961). In other words, if a court reviews such agency action *de novo,* under the preponderance of the evidence rule, the court trespasses on that area of our government reserved to the legislature.

We must, therefore, decide in this appeal whether appellants' lawsuit involves the exercise of a legislative or judicial function by the agency. " 'The action of an administrative body or officer is adjudicatory in character if it is particular and immediate, rather than, as in the case of legislative or rule-making action, general and future in effect.' " *Id.* 350 S.W.2d at 847. A major consideration in making the necessary determination is whether the agency's action concerns only the parties who are immediately affected or a wider group of those subject to the authority of the agency or even the public as a whole. *Texas State Board of Health v. Harrison Clinic Hospital,* 410 S.W.2d 181 (Tex.1966); *Scott v. Texas State Board of Medical Examiners,* 384 S.W.2d 686 (Tex.1964); *Chemical Bank and Trust Company v. Falkner,* 369 S.W.2d 427 (Tex.1963).

In our case appellants challenge the designation of the catastrophe area and the credit for voluntarily written insurance, both of which have a much broader application and effect than upon appellants' business. As a result, we conclude that the question is legislative in nature, and, as Article 1.04(f) requires a *de novo* review on appeal to the courts, if applied in this case, it would violate Tex.Const. art. II, § 1. The proper judicial review is under the substantial evidence rule, as the trial court correctly held. See *Davis v. City of Lubbock,* 160 Tex. 38, 326 S.W.2d 699 (1959); *Farmers and Merchants Insurance Company v. State Board of Insurance,* 321 S.W.2d 354 (Tex. Civ.App.1959, writ ref'd n. r. e.).

The judgment of the trial court is affirmed.