**In re DAN HIXSON CHEVROLET COMPANY, Debtor,**

**VOLKSWAGEN OF AMERICA, INC., Plaintiff,**

v.

**DAN HIXSON CHEVROLET COMPANY, Defendant.**

**Bankruptcy No. 181–00014.
Adv. No. 181–0004.**

United States Bankruptcy Court,
N. D. Texas,
Abilene Division.

July 31, 1981.

Joseph Colvin, Fort Worth, Tex., Trustee.

Dick Harris, Abilene, Tex., William L. Needler, Chicago, Ill., for Hixson, defendant.

Edward L. Kemble, Fort Worth, Tex., for Volkswagen, plaintiff.

## MEMORANDUM OPINION

JOHN FLOWERS, Bankruptcy Judge.

Dan Hixson Chevrolet Company (Hixson) was in the business of retailing automobiles in Abilene, Texas. By merger with Dan Hixson Auto Plaza, Ltd., Inc., Hixson assumed a franchise with Volkswagen of America, Inc. (Volkswagen). The business prospered until the fall and winter months of 1980 when falling demand for automobiles and rising interest rates contributed to Hixson's financial distress. Hixson sought resuscitation and filed for relief under Chapter 11 of the Bankruptcy Code on February 19, 1981. Volkswagen upon learning of this extraordinary action taken by Hixson, notified Hixson of its intent to terminate the franchise agreement.

Volkswagen's notice states that Hixson's action in filing a petition under the Bankruptcy Code constitutes a breach of the Dealer Agreement. The notice further states that "the above-mentioned reason for your termination is only one of several reasons." A copy of the notice was sent to the executive director of the Texas Motor Vehicle Commission (Commission).

On March 19, 1981, Volkswagen filed its complaint for relief from the stay, seeking a determination that the stay was inapplicable to Commission proceedings or in the alternative for relief to proceed before the Commission to show cause why the franchise should be terminated. Hixson and its trustee have answered that the matter should be litigated before the bankruptcy court and that no cause exists to lift the stay.

At the hearing before the court on April 6, 1981 Daniel Hixson, president of the defendant corporation, testified that the Volkswagen franchise was a valuable asset

of the debtor corporation. There was no evidence that the plaintiff's election to terminate was based upon the defendant's engaging in fraudulent activities or failure to honor warranty claims to customers in the operation of its business. The evidence reflects that plaintiff's election to terminate the franchise was based on alleged violations of the dealer franchise agreement.

On April 13, 1981, the executive director of the Commission (who is not a party before the court) mailed a notice of hearing stating in pertinent part: "Pursuant to formal written complaint filed with the Texas Motor Vehicle Commission by the above-named Movant (Volkswagen) and under authority of the Texas Motor Vehicle Code, the Commission has docketed the proceeding and set a hearing to determine under the provisions of Section 5.02(3) of the Code, whether or not good cause exists for the termination or refusal to continue Movant's dealer agreement with Respondent."

The parties have submitted briefs as requested by the court on the following issues: (1) Are proceedings before the Texas Motor Vehicle Commission subject to the automatic stay. (2) Does Section 365 of the Bankruptcy Code pre-empt the proceedings before the Texas Motor Vehicle Commission.

### APPLICATION OF THE AUTOMATIC STAY TO THE PROCEEDING BEFORE THE MOTOR VEHICLE COMMISSION

A petition filed under the Bankruptcy Code operates as a stay, applicable to all entities, of the commencement or continuation of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under the Code, 11 U.S.C. § 362(a)(1).[1] The filing of a petition however does not operate as a stay of

the commencement or continuation of any action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory powers, 11 U.S.C. § 362(b)(4).

Plaintiff contends that the proceeding now pending before the Texas Motor Vehicle Commission falls within the § 362(b)(4) exemption to the automatic stay. Plaintiff notes that the Texas Motor Vehicle Code is a constitutional exercise of the state's police power. Consequently it contends that the proceeding between plaintiff and defendant is an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

The Texas Motor Vehicle Commission was created pursuant to the Texas Motor Vehicle Code, V.T.C.S. art. 4413(36). The policy and purpose of the code is set forth in § 1.02 as follows:

> The distribution and sale of new motor vehicles in this State vitally affects the general economy of the State and the public interest and welfare of its citizens. It is the policy of this State and the purpose of this Act to exercise the State's police power to insure a sound system of distributing and selling new motor vehicles through licensing and regulating the manufacturers, distributors, and franchised dealers of those vehicles to provide for compliance with manufacturers' warranties and to prevent frauds, unfair practices, discriminations, impositions, and other abuses of our citizens.

In *New Motor Vehicle Board of the State of California v. Orrin W. Fox Co.*, 439 U.S. 96, 99 S.Ct. 403, 58 L.Ed.2d 361 (1978), the Supreme Court held that the California Automobile Franchise Act was a proper exercise of a state's police power to regulate business activities. The California Act contains provisions similar to those of the Tex-

---

1. Counsel for Debtor has also raised the applicability of § 362(a)(3) which stays any act to obtain possession of property of the estate or property from the estate. Although it is clear that the debtor's contractual rights in the executory franchise agreement are property of the estate (see Code section 541) it is not clear that

Volkswagen's action to terminate the franchise is an act to dismember the estate within the meaning of Section 362(a)(3). The debtor's broad construction would render other portions of the automatic stay unnecessary. However I reserve judgment on this issue as the case may be resolved on other grounds.

as Motor Vehicle Code, consequently the latter would almost certainly withstand a substantive due process challenge, see also *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).

Granted that the Texas Motor Vehicle Code is a proper exercise of the state's police power, the issue arises whether every action or proceeding taken by or before the Texas Motor Vehicle Commission is "to enforce its police or regulatory power," within the meaning of § 362(b)(4) of the Bankruptcy Code.

■ I do not believe that proceedings before the Commission or other governmental units are outside the operation of the automatic stay merely because the agency or governmental unit was created pursuant to a constitutional exercise of the state's police power. Such a construction would, as a practical matter, make the stay of administrative proceedings as described in § 362(a)(1) meaningless.[2] It is difficult to conceive of an administrative agency that is not a constitutional exercise of the state's police power in view of the "demise of the concept of substantive due process," New Motor Vehicle Bd. at 107.

In any interpretation of the scope of the stay it must be remembered it is automatic upon the filing of a bankruptcy case and its violation is punishable by contempt. Therefore due process requires that prohibited action be well defined. Furthermore the broad power of the court to grant injunctive relief upon proper application under § 105 of the Code should be considered in interpreting the parameters of automatic stays under § 362. The latter section is designed to stay the routine acts which impede the relief granted debtors under the Code and eliminate the burden on beleaguered debtors to make numerous requests of the court for relief from such action.

The problem of distinguishing which governmental or administrative proceedings are subject to the stay arises in part from the peculiar function and nature of the administrative units:

"The rationale of a system of administrative government, in Texas as elsewhere, is that certain of the economic and social exigencies of present-day life require affirmative governmental action for their alleviation. In these instances, the traditional governmental remedy of judicial enforcement of legislative prescription on a case-by-case basis alone is often inadequate. Moreover, legislatures and courts generally are ill-equipped to implement broad remedial programs efficiently. Thus the administrative agencies, charged with quasi-legislative and quasi-judicial functions have been established to execute governmental programs designed to control the individual's conduct of his commercial and noncommercial affairs, to set the costs of services that he obtains, and to provide services that he cannot otherwise obtain." *Administrative Government in Texas*, 47 Tex.Law Review 805, 808 (1969).

A single agency may as to one function exercise judicial powers, and as to other and different functions exercise executive or legislative powers, *Kost v. Texas Real Estate Comm.*, 359 S.W.2d 306 (Tex.Civ.App. —Texarkana, 1962), writ. ref. The major consideration in determining whether an administrative agency is exercising a legislative or judicial function is whether the agency's action concerns only parties who are immediately affected or a wider group of those subject to the authority of the agency or even the public as a whole, *Beacon National Ins. Co. v. Texas State Board of Ins.*, 582 S.W.2d 616 (Tex.Civ.App.—Austin, 1979) reh. den. The chameleon-like character of the administrative agencies complicates the proper application of the automatic stay to their various activities.

The leading decisions under the Bankruptcy Code which discuss the interplay between § 362(a)(1) and § 362(b)(4) involve governmental entities seeking to exercise executive type powers against the debtor. In *S. E. C. v. First Financial Group of*

2. See *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), "Courts should construe all legislative enactments to give them some meaning."

*Texas,* 645 F.2d 429 (5th Cir. 1981), the S.E.C. had brought an action to enjoin the debtor from violations of the security laws and for the appointment of a receiver. After the court issued an injunction an involuntary bankruptcy petition was filed against the defendant. The Court held that the continuance of the action by the S.E.C. and the enforcement of the injunctive relief were within exceptions (4) and (5) of § 362(b) as an action by a governmental unit to enforce its police or regulatory power.[3]

In *Missouri v. Lindsey,* 647 F.2d 768 (8th Cir. 1981), the state of Missouri argued that proceedings brought by the Missouri Department of Agriculture seeking to enforce state laws applicable to insolvent grain elevators was an exercise of police and regulatory power outside the operation of the automatic stay. The 8th Circuit rejected the state's contention stating:

> "In light of the legislative history and court decisions under the earlier bankruptcy act, we believe that the term 'police or regulatory powers' refers to the enforcement of state laws affecting health, welfare, morals and safety, but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court." *Lindsey* at 776.

In *National Labor Relations Board v. Evans Plumbing Co.,* 639 F.2d 291 (5th Cir. 1981), an administrative proceeding was held before the Board to determine whether the debtor had committed an unfair labor practice. The Board found that an unfair labor practice was committed and ordered that the debtor reinstate with back pay two discharged employees. The debtor did not participate further in the proceedings and the Board petitioned the Court of Appeals for enforcement of the order. The Court

was concerned whether the enforcement proceeding was subject to the automatic stay. The Court held that the Board was a governmental unit seeking to enforce its police and regulatory powers, and thus within the § 362(b)(4) exception. The decision permitted the entry of a judgment for back pay and injunctive relief, although the court noted it expressed no opinion as to whether an action to enforce the judgment is exempt from the automatic stay.

In summary, governmental activities have been found to be within the exception so long as the action relates to the enforcement of police or regulatory laws. However where the administrative agency is acting in a quasi-judicial capacity seeking to adjudicate private rights rather than effectuate public policy as defined by regulatory law the (b)(4) exception is inapplicable. Where the agency's action concerns only the parties who are immediately affected the debtor is entitled to the same protection it would receive under the automatic stay if the proceeding were pending instead in a judicial forum.

It is with the above considerations that I review the matter pending before the Texas Motor Vehicle Commission. The Commission is empowered to cause legal proceedings to be instituted to enforce the Motor Vehicle Code.[4] The Motor Vehicle Code sets forth licensing standards for dealers and manufacturers[5] and proscribes various unlawful activities.[6] A person engaging in such activities may be subject to civil penalties, and the Commission may seek injunctive relief by petitioning to the state district court.

Among the unlawful acts listed in the Act is the use by a dealer of false, deceptive

---

**3.** The court also held the appointment of an equity receiver by the District Court after the bankruptcy petition was filed was not a violation of the stay because it was a part of the enforcement exception in § 362(b), and it was not an act to obtain possession of property of the debtor, rather an act to preserve property for the estate. The latter acts are prohibited by § 362(a)(3) and not subject to the exceptions in § 362(b)(4) and (5). The court interpreted

"acts to obtain property of the debtor" to mean acts to dismember the estate for the benefit of a particular creditor.

**4.** V.T.C.S. art. 4413(36) § 3.05.

**5.** V.T.C.S. art. 4413(36) § 4.01 et seq.

**6.** V.T.C.S. art. 4413(36) § 5.01 et seq.

or misleading advertising.[7] A proceeding instituted by the Commission to investigate, to fix penalties, or to enjoin a dealer for violation of the false advertising prohibition would be a police or regulatory action clearly outside the operation of the automatic stay.

The section applicable to the dispute between plaintiff and defendant provides:

"It shall be unlawful for any manufacturer . . . to . . . terminate or refuse to continue any franchise with a dealer unless . . . if the dealer files a protest with the Commission, it is established by a preponderance of evidence at a hearing called by the Commission that there is good cause for the termination or noncontinuance. The Commission shall consider all the existing circumstances in determining good cause, including without limitation the dealer's sales in relation to the market, the dealer's investment and obligations, injury to public welfare, adequacy of service facilities, equipment, parts and personnel of the dealer and other dealers of new motor vehicles of the same line-make, whether warranties are being honored, and compliance with the franchise agreement." V.T.C.S., art. 4413(36) § 5.02(3).

It is important to focus on the two distinct proceedings that may arise under subsection 5.02(3). The Commission or the Attorney General may institute and conduct a suit against the manufacturer for failure to comply with the subsection. A manufacturer could be held in violation of the subsection by terminating the franchise without good cause. Such proceeding by the Commission against the manufacturer would be a proceeding by a governmental unit to enforce such unit's police or regulatory power.

However the subsection also provides for a hearing which may concern only the parties immediately affected, the manufacturer and the dealer. This hearing is to determine whether there is good cause for the termination of the franchise by the manufacturer. The hearing is in essence an adjudication of private rights. The matters raised in the hearing need relate only to violations of the private franchise agreement, no violations of the Motor Vehicle Code need be raised although they may be considered. Thus the good cause proceeding before the Commission is distinguished from the proceedings before the N.L.R.B. which necessarily involve alleged violations of the National Labor Relations Act and serve to effectuate public policy.[8] In the instant case Volkswagen cites the filing of a Chapter 11 petition as grounds for termination, yet such action is not a violation of the Motor Vehicle Code.

In view of the above, I hold that the proceeding between the plaintiff and defendant now pending before the Commission was commenced in violation of the automatic stay, § 362(a)(1). Any findings or order of the Commission arising out of the proceeding may therefore be collaterally attacked as void for lack of jurisdiction, *Kalb v. Feverstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940).

## PRE–EMPTION OF THE COMMISSION'S HEARING BY SECTION 365 OF THE CODE

Under Texas law, it is unlawful for a manufacturer of motor vehicles to terminate a franchise, if the dealer protests, unless it is established by a preponderance of evidence before the Motor Vehicle Commis-

---

**7.** V.T.C.S. art. 4413(36) § 5.01(2).

**8.** Proceedings before the National Labor Relations Board are commenced by the initiative of aggrieved individual persons. However a proceeding by the Board is not to adjudicate private rights but to effectuate a public policy, *N. L. R. B. v. Shipbuilding Local 22*, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968); *N. L. R. B. v. Williams-Dickie Mfg. Co.*, 130 F.2d 260 (5th Cir. 1942). The Board is empowered to prevent any person from engaging in any unfair labor practice affecting commerce, 29 U.S.C. § 160. Unfair labor practices are listed in 29 U.S.C. § 158. However a breach of contract between employer-employee does not as such constitute an unfair labor practice, and determination of such private dispute is not ordinarily for the Board, *Sinclair Refining Company v. N. L. R. B.*, 306 F.2d 569 (5th Cir. 1962).

sion, that there is good cause for the termination, see V.T.C.S. art. 4413(36) § 5.02(3) supra. Under federal bankruptcy law, the debtor in possession may assume an executory contract of the debtor, 11 U.S.C. § 365(a). The legislative history reflects that an executory contract is one in which "performance remains due to some extent on both sides; that is, when neither side has fully performed." House Report No. 95–595, at 347, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6303. The franchise agreement in the instant case is an executory contract. Notwithstanding a provision in an executory contract, such contract may not be terminated at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on the commencement of a case under Title 11 of the United States Code, 11 U.S.C. § 365(e)(1)(B). If there has been a default in an executory contract, the debtor in possession may not assume such contract unless the debtor cures, or provides adequate assurance that it will promptly cure and provides adequate assurance of future performance, 11 U.S.C. § 365(b).[9]

The Texas statute conditions the right of a motor vehicle manufacturer to terminate a franchise upon its showing that good cause exists for termination. The federal bankruptcy statute sets forth conditions under which the debtor may assume a contract notwithstanding breaches which in the absence of the bankruptcy proceeding would allow the nondebtor party to terminate. In *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1974) the Supreme Court held that state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause, even if the state legislature had some purpose in mind in passing its law other than one of frustration. The issue presented is whether the "good cause" hearing before the Texas Motor Vehicle Commission frustrates the full effectiveness of § 365 of the Bankruptcy Code.

It is clear that the state legislature in passing the Motor Vehicle Code did so without the intent to frustrate federal law. The "good cause" hearing is obviously designed to limit the ability of a manufacturer to terminate a franchise, and failure to comply subjects the manufacturer to liability for a civil penalty. It supplements the traditional government remedy of judicial enforcement of contract law on a case-by-case basis. Where the dealer is a debtor under the Bankruptcy Code, the Texas statute in fact serves to protect the debtor.

However the raison d'etre of the good cause hearing is substantially similar to that of the hearing provided for under § 365 of the Bankruptcy Code. Both hearings promote a policy of continuing the dealer-debtor in operation as a franchisee so long as the manufacturer's rights are adequately protected. Considerations such as dealer sales, adequacy of service facilities and compliance with the franchise agreement would be relevant to both proceedings. The Motor Vehicle Code and the Bankruptcy Code create a mechanism for enforcing the dealer-debtor's right to remain a franchisee. The former statute allows the Commission and the Attorney General to commence a suit to recover a civil penalty against the manufacturer who terminates the franchise after the Commission determines good cause to terminate is lacking. The Bankruptcy Code[10] gives the bankruptcy court power to issue any order, process or judgment necessary or appropriate to enforce the debtor's right to assume an executory contract.

Plaintiff cites *In re Grand Spaulding Dodge, Inc.*, 5 B.R. 481 (Bkrtcy.N.D.Ill.1980) for the proposition that the Motor Vehicle Commission's proceedings do not operate in "frustration" of the purposes of federal bankruptcy laws but rather operate in a

---

**9.** As a general rule, the assuming trustee or debtor takes the contract cum onere—that is, subject to all its provisions and conditions, *Greif Bros. Cooperage Co. v. Mullinix*, 264 F. 391 (8th Cir. 1920). However the Code modi-

fies prior law by denying effect to specified ipso facto clauses, see 2 Collier on Bankruptcy 15th Ed., § 365.06.

**10.** 11 U.S.C. § 105.

separate regulatory sphere. It is true that some portions of the Motor Vehicle Code, i. e. fraud and consumer protection, may represent other spheres of regulation outside the coverage of federal bankruptcy law. However, the sections involved in this case, § 5.03 of the Motor Vehicle Code and § 365 of the Bankruptcy Code both regulate the executory contractual relationship between a manufacturer and a dealer-debtor.

In view of the duplicative regulatory powers created in the state and federal law, I find that to permit proceedings before the Commission to determine whether a debtor's franchise agreement is to be terminated would frustrate the purposes of federal bankruptcy laws [11] therefore such proceedings must bow to the Supremacy Clause of the U. S. Constitution. Any conclusions by the Commission would not preclude the bankruptcy court from making its own findings of fact with respect to the ability of the debtor to assume the franchise agreement, as Congress by enacting § 365 of the Bankruptcy Code has withdrawn from all other courts the power to decide this issue.[12] If the bankruptcy court found that the debtor could assume the franchise contract, the court could order the manufacturer in contempt for a subsequent termination notwithstanding the Commission's approval of the termination action. On the other hand, a finding by the bankruptcy court that the debtor is unable to assume the executory franchise agreement would render the Commission's good cause hearing unnecessary and moot. Consequently I find that to require the debtor to litigate the good cause for termination issue before the Commission as provided by section 5.03 of the Texas Motor Vehicle Code frustrates the full effectiveness of § 365 of the Bankruptcy Code. I hold that the jurisdiction of the bankruptcy courts to hear the assumption of executory contract issue pre-empts the jurisdiction of the Commission to decide whether good cause exists for termination of a dealer franchise where the dealer seeks relief under the Bankruptcy Code.

Volkswagen's complaint for relief from the automatic stay to proceed with a § 5.03 hearing before the Texas Motor Vehicle Commission is hereby DENIED. The foregoing constitutes findings of fact and conclusions of law pursuant to Rule 52, F.R. C.P.

---

11. See House Report No. 95–595 at 49. The forum shopping and jurisdictional litigation that have plagued the bankruptcy system . . . the dissipation of assets and the expense associated with bifurcated jurisdiction will be eliminated by the jurisdiction proposed by this bill.

12. *Kalb v. Feverstein*, 308 U.S. at 440, 60 S.Ct. at 346 n. 12 [Footnote 12] states: "That a State Court before which a proceeding is competently initiated may—by operation of supreme Federal law—lose jurisdiction to proceed to a judgment unassailable on collateral attack is not a concept unknown to our federal system."