**In re CHARTER FIRST MORTGAGE, INC., Debtor-in-possession.**

**Bankruptcy No. 683–07420.**

United States Bankruptcy Court, D. Oregon.

Feb. 6, 1984.

Wilson C. Muhlheim, Hershner, Hunter, Miller, Moulton & Andrews, Eugene, Or., for plaintiff.

Betsy R. Hollingsworth, Tina E. Kondo, Asst. Attys. Gen., State of Washington, Seattle, Wash., for defendant.

## MEMORANDUM OPINION

POLLY S. WILHARDT, Bankruptcy Judge.

The debtor-in-possession (hereinafter debtor) has filed a motion for an order to show cause why the Attorney General and two assistant attorneys general for the State of Washington (hereinafter Washington) should not be held in contempt for violation of the automatic stay provision of 11 U.S.C. § 362(a). This court must determine whether Washington's proceeding falls within either or both of the exceptions to that subsection described in 11 U.S.C. §§ 362(b)(4) and (5). If this court determines that the automatic stay applies to Washington's proceeding, it must decide further whether a contempt finding against Washington is appropriate under these circumstances.

The facts are not in dispute. On November 24, 1982, Washington filed a complaint in its state court against debtor, among others, alleging certain violations by debtor of Washington's Consumer Protection Act. Since this filing, debtor has ceased its operations in Washington. On April 20, 1983, debtor filed a petition for relief under Chapter 11. Washington had early knowledge of debtor's bankruptcy filing; nonetheless, it decided to proceed with its consumer protection action against debtor. Washington notified debtor's bankruptcy attorney of its decision and its basis for such decision—specifically that the state's action was excepted from the automatic stay by the provisions of 11 U.S.C. §§ 362(b)(4) and (5). No specific request for either a stay or relief from stay has been made in this case. However, this court interprets debtor's motion for an order to show cause why Washington should not be found in contempt to include a request that the court enjoin Washington from any acts it finds to be in violation of the stay.

■ The filing of a petition for relief operates as an automatic stay, applicable to all entities, of proceedings against the debtor, including the commencement or continuation of a law suit. 11 U.S.C. § 362; 2 Collier on Bankruptcy ¶ 362.04, at 362–30 (15th ed. 1983). Section 362(b) lists several exceptions to this broad stay provision. Sections 362(b)(4) and (5) state:

(b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory powers;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

This court believes § 362(b)(5) to be inapplicable to the facts of this case. The statute's language limits its enforcement provisions to the circumstances described in § 362(a)(2). Section 362(a)(2) speaks only of judgments obtained against the debtor or estate property before the commencement of a bankruptcy proceeding. The court is aware the legislative history of this subsection interprets the language to authorize entry of judgments against the debtor after the filing of the bankruptcy petition. As §§ 362(a)(2) and (b)(5) are plain and unambiguous on their face, I shall not look to the legislative history for their meaning. *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 185 n. 29, 98 S.Ct. 2279, 2297 n. 29, 57 L.Ed.2d 117 (1978). Washington holds no pre-petition judgment against debtor. Thus, it is not in a position to avail itself of § 362(a)(5). Washington's actions must be protected by the provisions of § 362(a)(4) if at all.

■ The Washington legislature passed their Consumer Protection Act for the laudatory purpose, among others, of protecting their citizens from unfair and deceptive trade and commercial practices. Wash.Rev.Code § 19.86.920 (1981). The Consumer Protection Act is a constitutional exercise of Washington's police power. *State v. Ralph Williams N.W. Chrysler Plymouth, Inc.*, 82 Wash.2d 265, 510 P.2d 233 (1973). However, as is indicated in *In re Herr*, 28 B.R. 465, 467 (Bankr.D.Me. 1983), every action brought under a statute which authorizes exercise of the state's police power does not automatically fall within the provisions of § 362(b)(4). Such an interpretation would render § 362(a)(1) useless verbiage. *Herr* continues at page 468:

Bankruptcy courts have applied two tests in deciding which governmental proceedings are excepted from the stay by section 364(b)(4): the pecuniary purpose and the public policy test. The pecuniary purpose test is derived from language in the legislative history of the Bankruptcy Code:

"[S]ection [362(b)(4)] is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate."

(quoting 124 Cong.Rec. H11,092 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 6436, 6444–45.)

The elusive distinction between protection of a pecuniary interest and protection of public health and safety has been fleshed out by courts in applying the language of the subparagraph to the varied facts before them.

In reviewing the cases, it is clear to this court that in applying the pecuniary purpose test, it must look to what specific acts the government wishes to carry out and determine if such execution would result in an economic advantage to the government or its citizens over third parties in relation to the debtor's estate.

In *In re Thomassen,* 15 B.R. 907 (Bankr. 9th Cir.1981), the California Board of Medical Quality Assurance was allowed to proceed with license revocation hearings against the debtor on the court's finding that the state's interest was in punishing past and preventing future alleged misconduct, not in pursuing a creditor's claim.

The Industrial Commission of Ohio, Bureau of Workers' Compensation was found to fall within the exception of § 362(b)(4) in adjudicating claims of the debtors' employees for workers' compensation benefits. The Sixth Circuit was careful to point out, however, that under the particular facts "the exercise by the Commission of its lawful power ... gives it no preference over the creditors of the debtor and injures them in no respect as it does not interfere with the property of the debtors estate." *In re Mansfield Tire and Rubber Company,* 660 F.2d 1108, 1113 (6th Cir.1981). This was due to the fact that an insurance fund or bond, not the debtors' estate, would pay any claims.

In *Fintel v. State of Oregon,* 10 B.R. 50 (Bankr.D.Or.1981) Bankruptcy Judge Donal Sullivan allowed the Oregon Builders' Board to adjudicate claims against builder-debtors. He indicated a stay would be inappropriate where a bond was in place for the purpose of protecting claimants.

Washington relies as precedent on *In re Grand Spaulding Dodge, Inc.,* 5 B.R. 481 (D.C.N.D.Ill.1980) to support its position that state proceedings under a Consumer Protection Act are excepted under § 362(b)(4). Upon examination of that case, we find the district court allowed the state relief because under the Bankruptcy Act, the bankruptcy court was found to have no summary jurisdiction to enjoin a state statute where no claim or lien was being asserted against the debtors' property interest. The holding in that case has lost its relevance as the present Bankruptcy Code, in expanding the jurisdiction of the bankruptcy court, eliminated any distinction between "summary" and "plenary" jurisdiction.

The most striking example of a governmental unit's attempt to gain an economic advantage by interference with the debtor's property is reported in *State of Missouri v. U.S. Bankruptcy Court,* 647 F.2d 768 (8th Cir.1981). The state was stayed from attempting to possess and liquidate grain, under the Missouri Grain Warehouse Law, for the benefit of debtor's creditors who had stored grain in debtor's elevators.

Other stayed acts appear in *In re Penn Terra Ltd.,* 24 B.R. 427 (Bankr.W.D.Pa. 1982) (Pennsylvania's Department of Environmental Resources could not pursue a mandatory injunction found to be an attempt to enforce a money judgment); *In re Sampson,* 17 B.R. 528 (Bankr.D.Conn.1982) (Connecticut Commissioner of Motor Vehicles stayed from requiring debtor to deposit security sufficient to satisfy any judgment recovered against debtor as a result of an auto accident); *In re Gibbs,* 9 B.R. 758 (Bankr.D.Conn.1981) (City of New Haven stayed from attempt to repossess debtor-tenant's premises for non-payment of rent).

■ The public policy test attempts to distinguish between those proceedings which fulfill a public policy and those which adjudicate private rights. *In re Herr,* 28 B.R. 465, 468 (Bankr.D.Me.1983), citing *In re Dan Hixson Chevrolet Company,* 12 B.R. 917, 920 (Bankr.N.D.Tex.1981). In *In re Dan Hixson Chevrolet Company,* Judge Flowers pointed out "the problem of distinguishing which governmental or administrative proceedings are subject to the stay arises in part from the peculiar function and nature of the administrative units." *Id.* at 920. Administrative agencies often combine legislative, executive and judicial functions. Judge Flowers continues:

A major consideration in determining whether an administrative agency is exercising a legislative or judicial function is whether the agency's action concerns only parties who are immediately affected or a wider group of those subject to the authority of the agency or even the public as a whole, *Beacon National In-*

*surance Company v. Texas State Board of Insurance,* 582 S.W.2d 616 [ (Tex.Civ. App.1979) ].

*Id.*

In *Hixon,* the judge found that where the Texas Motor Vehicle Commission was to determine whether debtor's franchise with Volkswagon of America, Inc., should be terminated because of alleged violations under the franchise agreement, the Commission was acting in a judicial capacity "seeking to adjudicate private rights rather than effectuate public policy" and thus was stayed from proceeding. "Where the agency's action concerns only the parties who are immediately affected the debtor is entitled to the same protection it would receive under the automatic stay if the proceeding were instead in a judicial forum." *Id.* at 921.

The cases appear in agreement that the governmental unit, as a legitimate aid to its police power, may move to obtain the issuance of an injunction and recovery of civil penalties against the debtor to punish past and prevent future wrongs. *Hixson* at 921; *In re Tauscher,* 7 B.R. 918 (Bankr. E.D.Wis.1981); *In re County Fuel Company, Inc.,* 29 B.R. 534 (Bankr.D.Md.1983); *In re D.M. Barber, Inc.,* 13 B.R. 962 (Bankr.N.D.Tex.1981). This position is supported by legislative history:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, *or attempting to fix damages for violations of such a law,* the actions or proceeding is not stayed under the automatic stay.

(emphasis added) H.R.Rep. 95–595, 95th Cong., 1st Sess. 342–3 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 51–2 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5838, 6299.

An example of the distinction made between assessing a penalty and collecting on a claim is addressed in *In re Herr.* There, the court found Maines' Unemployment Agency determination that the debtor had received an overpayment of unemployment benefits and had no right to receive any further benefits for six months was not an attempt to collect a claim, as the debtor asserted, but rather a punishment or penalty for a fraud violation.

■ This court finds it is totally appropriate for Washington to proceed in the state court to attempt to obtain an injunction, civil penalties and attorney fees and costs against debtor for alleged violation of its Consumer Protection Act. Such state powers are a necessary and important adjunct to its responsibility to protect its whole citizenry from deceptive consumer practices. The authority to protect the public welfare would be largely meaningless without the power to punish and prevent. Such steps violate neither the pecuniary purpose test nor the public policy test.

The debtor contends the need for injunctive relief is now moot because the debtor has ceased operations in the State of Washington. The bankruptcy court is not the appropriate forum in which to make this argument. This is an issue of state law to be decided by the state court within the context of the specific statute being enforced.

This court makes no determination as to the status of any claim Washington may have against the debtor's estate arising out of any future assessment of penalties and/or attorneys fees and costs. That is a separate legal issue yet to be placed before us.

Debtor argues that Washington, by seeking restitution of moneys on behalf of certain of its citizens, is attempting to collect private claims outside the bankruptcy system. With this we agree, for the bankruptcy system was established to exclusively adjudicate claims against the estate.

Wash.Rev.Code § 19.86.080 (1981) states: "The court may make such additional orders or judgments as may be necessary to

restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any act herein prohibited or declared to be unlawful." This statute has been interpreted by the Washington Supreme Court as an appropriate adjunct and aid to the relief asked on behalf of the public at large. "Suits for injunctive relief and restitution to enforce the laws of the particular jurisdiction are in the public interest by restoring the status quo." *State v. Ralph Williams,* supra, 510 P.2d p. 241. However, the cause of action requesting restitution to private individuals would place the determination of the existence and legitimacy of those individual's property claims against the debtor's estate squarely in front of the Washington court. This particular section of the Washington Consumer Protection Act does not have, as its primary purpose, the protection of the public health and safety; rather, its objective is to aid. in the collection of property for third parties. Any state court ordering restitution for certain citizens from the debtor is certainly creating for those few citizens an advantage over other potential creditors of the debtor's estate. The court will have made a binding judicial determination as to both the existence and legitimacy of those claims without having had to consider and apply the many technical conditions created by the Bankruptcy Code which test the validity of claims against the debtor's estate. Any court action to enforce this statute does not fall within the language of § 362(b)(4) and thus is stayed.

■ Debtor has requested this court to find Washington in contempt for wilful violation of the stay provisions of § 362(a)(1). In order to find a party in contempt, the court must find there was a specific definite order of the court which the party violated and that the party had actual notice of the order. *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir.1976). It is clear a party is in contempt of court if he knowingly violates a court order, whether or not he receives a formal notice. *In re Rubin,* 378 F.2d 104 (3rd Cir.1967). It is also clear that auto-

matic stay provisions are "specific and definite" orders of the court. *In re Mealey,* 16 B.R. 800, 802 (Bankr.E.D.Pa.1982), (citing *In re Norton,* 15 B.R. 623 (Bankr.E.D.Pa. 1981)).

■ The court does not know if Washington received formal notice of the debtor's bankruptcy filing, but the record demonstrates Washington had early actual informal notice of such from debtor's attorney.

The significant question is whether, as it had knowledge of the bankruptcy order, Washington should be found in contempt. Section 362(b) states: "The filing of a petition under section 301, 302 or 303 of this title *does not operate as a stay....*" (emphasis added). Thereafter are listed subparagraphs (4) and (5) by means of which Washington argues it has authority to proceed.

The courts have split on whether a party wishing to proceed against a debtor under one of the subparagraphs of § 362(b) must first petition the court for authority so to do. *Stamper v. Stamper,* 17 B.R. 216, 221 (Bankr.S.D.Ohio 1982); *Tauscher,* supra at 920. We believe the clear language of that section means just what it says—that as to those acts listed, the filing of a bankruptcy petition has no stay effect, and the parties purporting to act under any of those subparagraphs may proceed as if none were filed. This interpretation is supported by legislative history. "By excepting an act or action from the automatic stay, the bill simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay." H.Rep. No. 95–595, 95th Cong., 1st Sess. 342–3 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 51–2 (1978), U.S.Code Cong. & Admin. 1978, pp. 5837, 6298. As stated, the trustee or debtor-in-possession must initiate the process to bring any controversy regarding the extent of the stay to issue.

■ Although we have found Washington in violation of the stay we will not, under these circumstances, find it in con-

tempt. The legal principles raised by the parties herein are not clearly defined. Washington's interpretation of 11 U.S.C. §§ 362(b)(4) and (5) was reached in good faith. Its actions have been straightforward, made with no attempt to disguise, misrepresent, or disregard the requirements of the Bankruptcy Code. As stated in *In re Hurricane Elkhorn Coal Corp. II,* 19 B.R. 609, 621 (Bankr.E.D.Ky.1982): "We reserve the awesome power of contempt for only those creditors whose actions show a clearly contumacious frame of mind."

Because valid legal arguments were raised by both parties to this controversy, we find no basis for an award of attorneys fees. Each party shall bear its own fees and expenses.

Debtor's motion for an order to show cause why Washington should not be held in contempt is denied.

Washington is hereby stayed from proceeding to obtain an order of restitution against the debtor on behalf of its citizens of moneys or properties.

A separate judgment shall be issued consistent herewith.

This Memorandum Opinion contains the court's Findings of Fact and Conclusions of Law and pursuant to Bankruptcy Rule 9014, which incorporates Rule 7052, they will not be separately stated.