UNITED STATES of America, Plaintiff,

v.

MATTIACE INDUSTRIES, INC., Capgo Trucking, Inc., and Interstate Cigar Co., Inc., Defendants.

No. 86–CV–1792

United States District Court,
E.D. New York.

May 15, 1987.

U.S. Dept. of Justice, Land & Natural Resources Div., Environmental Enforcement Section (Joseph J. McGovern, Washington, D.C., Perter Stinson, of counsel), for plaintiff.

Gordon & Silber, P.C. (David Henry Sculnick, David Dince, Peter P. Traub, Jr., New York City, of counsel), for defendant Mattiace Industries, Inc.

Rivkin, Radler, Dunne & Bayh (Joseph Zedrosser, Theodore Firetog, Uniondale, N.Y., of counsel), for defendant Interstate Cigar Co., Inc.

DECISION AND ORDER

BRAMWELL, District Judge.

Plaintiff United States of America, on behalf of the Environmental Protection Agency (EPA), commenced this action pursuant to sections 104(a), (b), and (c), 106(a) and (b), and 107(a) and (c) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9604(a), (b), and (c), 9606(a) and (b), and 9607(a) and (c), seeking (1) to hold the defendants Mattiace Industries, Inc. (Mattiace), Capgo Trucking Industries, Inc. (Capgo), and Interstate Cigar Co., Inc. (Interstate) jointly and severally liable for the costs incurred by the United States in responding to and cleaning up a hazardous waste site in Hicksville, New York; (2) to impose civil fines and punitive damages for defendants' failure to comply with EPA administrative cleanup orders; and (3) to obtain injunctive relief requiring defendants to monitor the groundwater at the site. Presently before the Court are the objections of defendant Mattiace, a debtor in possession under Chapter 11 of the Bankruptcy Code, to an order signed by Magistrate David F. Jordan on January 22, 1987 denying Mattiace's application to stay certain portions of the action pursuant to the automatic stay provision of the Bank-

ruptcy Code, 11 U.S.C. § 362(a)(1). For the reasons that follow, the Court is of the opinion that Magistrate Jordan's decision was neither clearly erroneous nor contrary to law, and that Mattiace's objections must therefore be rejected. *See* 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a).[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

The factual allegations of the complaint, which will be accepted as true for the purpose of this decision, may be summarized as follows:

Defendant Mattiace, a New York corporation having its principal place of business in Glen Cove, New York, is engaged in the business of packaging and selling chemicals, including the flammable and toxic substance methyl ethyl ketone (MEK). Sometime on or before February 16, 1982, Mattiace entered into a contract with defendant Capgo whereby Capgo agreed to provide a tractor and driver to haul one of Mattiace's tanker trailers, which contained approximately 8,000 gallons of MEK, from New Jersey to Virginia. On February 16, 1982, pursuant to the agreement, Capgo picked up the tanker trailer containing the MEK from Mattiace and transported it to a parking lot owned or controlled by defendant Interstate and located at 530 West John Street in Hicksville, New York.[2] At some point between the evening of February 16 and the morning of February 17, the tanker trailer overturned, spilling approximately 4800 gallons of MEK onto the parking lot. Much of the MEK seeped into the soil underneath the lot, wherein lies an aquifer formally designated by EPA as a "sole-source drinking water acquifer."

After EPA formally notified the defendants of their responsibility for the spill and conducted a preliminary analysis of the site, EPA issued administrative orders on September 30, 1982 to Mattiace and Interstate requiring them to assess the situation at the site, submit a plan for removing the MEK from the soil and groundwater, and monitor the site. On December 10, 1982, EPA issued an identical order to Capgo.

According to the complaint, Mattiace agreed to pay the costs of the cleanup and began some work at the site in late 1982 and early 1983. On February 4, 1983, however, Mattiace ceased its work at the site, and none of the defendants thereafter performed any cleanup work at the site. Subsequently, from May to November, 1984, EPA expended approximately $1 million of Superfund money in conducting a response action pursuant to section 104(a) of CERCLA, 42 U.S.C. § 9604(a), which included testing and treating the groundwater and removing the MEK.

On May 7, 1986, Mattiace filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, thereby triggering the automatic stay mechanism of section 362 of the Bankruptcy Code. The United States subsequently commenced the present action on May 28, 1986. On June 12, 1986, this Court signed an order referring the case to Magistrate Jordan for pretrial purposes. Mattiace thereafter moved before Magistrate Jordan to have certain portions of the action stayed pursuant to section 362(a)(1) of the Bankruptcy Code. Magistrate Jordan signed an order denying the motion on January 22, 1987, and Mattiace filed the present objections to that order on February 3, 1987.

## II. DISCUSSION

Section 362 of the Bankruptcy Code, the automatic stay provision, provides in relevant part as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

---

**1.** Because the Court has determined that Mattiace's objections to Magistrate Jordan's order are substantively meritless, the Court will not address the United States' and Interstate's arguments that the objections are untimely and in improper form.

**2.** The apparent discrepancy between the contractual agreement to haul the MEK from New Jersey to Virginia and the commencement of actual performance in New York is not addressed by the parties.

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

\*　　\*　　\*　　\*　　\*　　\*

(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—

\*　　\*　　\*　　\*　　\*　　\*

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

\*　　\*　　\*　　\*　　\*　　\*

11 U.S.C. § 362(a)(1), (b)(4). Thus, although section 362(a)(1) operates generally to stay judicial proceedings against a debtor, section 362(b)(4) creates an exception to the stay for actions or proceedings to enforce a governmental unit's police or regulatory power.[3]

In the present case, Mattiace concedes, as it must, that to the extent the United States seeks injunctive relief and fines, the action falls squarely within the section 362(b)(4) exception to the automatic stay. *See* In re *Commonwealth Oil Refining Co.*, 805 F.2d 1175, 1182–86 (5th Cir.1986) (injunctive relief); *Penn Terra Ltd. v. Department of Envtl. Resources*, 733 F.2d 267, 271–79 (3d Cir.1984) (injunctive relief); *United States v. F.E. Gregory & Sons*, 58 B.R. 590, 591 (W.D.Pa.1986) (injunctive relief); *United States v. ILCO, Inc.*, 48 B.R. 1016, 1023–24 (N.D.Ala.1985) (injunctive relief); *United States v. Energy Int'l, Inc.*, 19 B.R. 1020, 1021 (S.D.Ohio 1981) (civil penalty); In re *Lenz Oil Serv., Inc.*, 65 B.R. 292, 294 (Bankr.N.D.Ill.1986) (fines and penalties); In re *Laurinburg Oil Co.*, 49 B.R. 652, 654 (Bankr.M.D.N.C.1984) (in-

junctive relief); In re *Charter First Mortgage, Inc.*, 42 B.R. 380, 384 (Bankr.D.Or. 1984) (injunction, civil penalties, and attorneys fees); Note, *Clean-Up Orders and the Bankruptcy Code: An Exception to the Automatic Stay*, 59 St. John's L.Rev. 292, 301–04, 310–11 (1985). Mattiace contends, however, that to the extent the United States seeks to recover response costs already incurred, or punitive damages, the action must be stayed under the so-called "pecuniary interests" rule. That rule is rooted in the following brief excerpt from the legislative history of section 362(b)(4):

> This section is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.

124 Cong.Rec. S17,409 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6505, 6513 (statement of Sen DeConcini); 124 Cong.Rec. H11,089 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6436, 6444–45 (statement of Rep. Edwards). Thus, Mattiace relies on a line of cases in which courts have held that the automatic stay exception of section 362(b)(4) applies only to exercises of police or regulatory power aimed at protecting the health and safety of the public, and not to those aimed at protecting a pecuniary interest in the property of the debtor. *E.g.*, *Missouri v. United States Bankruptcy Court*, 647 F.2d 768, 776 (8th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982); In re *Charter First Mortgage, Inc.*, *supra*, 42 B.R. at 382; In re *Sampson*, 17 B.R. 528, 530 (Bankr.D.Conn.1982); In re *Pizza of Hawaii, Inc.*, 12 B.R. 796, 799 (Bankr.D.Haw.1981); In re *Joe Delisi Fruit Co.*, 11 B.R. 694, 696–97 (Bankr.D. Minn.1981); In re *King Memorial Hosp., Inc.*, 4 B.R. 704, 707 (Bankr.S.D.Fla.1980). After considering these cases and others,

---

**3.** As observed by Mattiace, because the United States is not seeking to enforce a money judgment obtained before the commencement of Mattiace's bankruptcy proceedings, the automat-

ic stay provision of section 362(a)(2), 11 U.S.C. § 362(a)(2), and the related exception of section 362(b)(5), 11 U.S.C. § 362(b)(5), are inapplicable to the present case.

and after reviewing the legislative history of section 362(b)(4), the Court is compelled to conclude that the "pecuniary interests" rule is inapplicable to the present CERCLA case.

None of the cases that have applied the pecuniary interest rule in holding section 362(b)(4) inapplicable have involved CERCLA, or any other environmental legislation. Rather, each has involved statutes considered by the court to have been enacted primarily for financial reasons, and not primarily to protect the public health and welfare, thus permitting easy classification of the police or regulatory proceeding as protecting either a pecuniary interest or the public health, safety, and welfare. *See, e.g., Missouri v. United States Bankruptcy Court, supra,* 647 F.2d at 776 (involving state's grain warehousing laws); *In re Charter First Mortgage, Inc., supra,* 42 B.R. 385 (action for restitution to private individuals under state consumer protection statute); *In re Sampson, supra,* 17 B.R. at 530 (action to enforce state's financial responsibility law); *In re Pizza of Hawaii, Inc., supra,* 12 B.R. at 799 (state statute requiring payment of delinquent taxes before issuance of liquor license); *In re Joe Delisi Fruit Co., supra,* 11 B.R. at 696–97 (administrative proceeding by state to protect financial interests of one class of creditors); *In re King Memorial Hosp., Inc., supra,* 4 B.R. at 707 (revocation of hospital's license to operate in state not done to protect public health and welfare); *see also In re Cash Currency Exch., Inc.,* 762 F.2d 542, 555 (7th Cir.1985) (liquidation proceedings under state currency laws); *In re Jal Gas Co.,* 44 B.R. 91, 94 (Bankr.D.N.M.1984) (state public service commission's attempt to force debtor-utility to refund to customers excessive rate overpayments); *In re Greenwald,* 34 B.R. 954, 957 (Bankr.S.D.N.Y.1983) (state health commissioner's attempt to recover medicaid overpayments). *See generally In re Lawson Burich Assocs.,* 31 B.R. 604, 611 (S.D.N.Y.1983).

By contrast, government actions under CERCLA, whether for injunctive relief or for recovery costs, damages, and penalties, are brought pursuant to a statute that was clearly enacted to protect the health, safe-ty, and welfare of the public. *See e.g.,* H.R.Rep. No. 1016, 96th Cong., 2d Sess. 1, 17–18, *reprinted in* 1980 U.S.Code Cong. & Admin.News 6119, 6119–20 (purpose of CERCLA is to provide "for appropriate environmental response action to protect public health and the environment from the dangers posed by [hazardous waste] sites," which "present a serious risk to public health"); *cf. Penn Terra Ltd. v. Department of Envtl. Resources, supra,* 733 F.2d at 274 ("No more obvious exercise of the State's power to protect the health, safety, and welfare of the public can be imagined" than actions to rectify harmful environmental hazards). Even where the United States seeks punitive damages or reimbursement of Superfund cleanup costs in addition to or in lieu of injunctive relief, thereby arguably protecting its own pecuniary interest, the deterrence function of the relief sought will render the action one to protect the public health, safety, and welfare. *Cf. United States v. Standard Metals Corp.,* 49 B.R. 623, 625 (D.Colo. 1985) (noting that the deterrence function of potential fines under the Clean Water Act protects the public health and safety within the meaning of section 362(b)(4) and the pecuniary interests rule). Indeed, the legislative history of section 362(b)(4) expressly contemplates actions such as the present one falling within the ambit of the section 362(b)(4) exception to the automatic stay:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, *environmental protection,* consumer protection, safety, or similar police or regulatory laws, *or attempting to fix damages for violation of such a law,* the action or proceeding is not stayed under the automatic stay.

S.Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5838 (emphasis added); H.R.Rep. No. 595, 95th Cong., 1st Sess. 343, *reprinted in* 1978 U.S.Code Cong. &

Admin.News 5963, 6299 (emphasis added); *see also Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection,* 474 U.S. 494, ——, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (Congress intended to overrule judicial decisions that had expanded the automatic stay to foreclose states' efforts to enforce antipollution laws), *reh'g denied,* —— U.S. ——, 106 S.Ct. 1482, 89 L.Ed.2d 736 (1986). Finally, the Court is aware of only two cases in which courts have specifically addressed the issue of whether CERCLA actions to recover response costs fall within the section 362(b)(4) exception to the automatic stay. Both cases were decided in the affirmative. *United States v. MacKay,* No. 85–C–6925 (ACW) (N.D.Ill. Jan. 17, 1986) (unpublished Memorandum Opinion and Order) [Available on WESTLAW, DCT database]; *United States v. ILCO, Inc.,* No. 85–H–823–S (JHH) (N.D.Ala. Sept. 27, 1985) (unpublished Order granting leave to amend complaint to include claim to recover costs of CERCLA response action from Chapter 11 debtor) [Available on WESTLAW, DCT database]; *accord United States v. Standard Metals Corp., supra,* 49 B.R. at 625 (proceeding to collect a $25,000 suspended fine imposed for violation of stipulation and settlement in action under Clean Water Act); *Illinois v. Electrical Utils.,* 41 B.R. 874, 876 (N.D.Ill.1984) (state's action against debtor under federal Toxic Substances Control Act seeking, *inter alia,* recovery of "all costs of studies and investigations incurred to date and/or in the future by plaintiff regarding the PCB contamination at the site" held within section 362(b)(4) exception to automatic stay).[4]

### III. CONCLUSION

Based on the foregoing analysis, this Court is convinced that Magistrate Jordan's decision to deny Mattiace's motion for a stay pursuant to 11 U.S.C. § 362(a)(1) was correct. Accordingly, Mattiace's objections to the order embodying that deci-

sion are overruled, and the order is affirmed.

IT IS SO ORDERED.

---

**4.** Adding further support to the Court's conclusion that the present case is exempt from the automatic stay are cases in which courts have interpreted sections 362(b)(4) and 362(b)(5) to permit entry or enforcement of a back-pay award against a debtor-employer. *See EEOC v.* *Rath Packing Co.,* 787 F.2d 318, 325, 326 (8th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986); *Ahrens Aircraft, Inc. v. NLRB,* 703 F.2d 23, 24 (1st Cir.1983); *NLRB v. Evans Plumbing Co.,* 639 F.2d 291, 293 (5th Cir.1981).