In re REVERE COPPER AND BRASS, INC., et al., Debtors.

REVERE COPPER PRODUCTS, INC., Applicant,

v.

HUDSON RIVER SLOOP CLEAR-WATER, INC.; Natural Resources Defense Council, Inc.; Trial Lawyers for Public Justice, P.C.; E. Stewart Jones, Jr.; Anthony Z. Roisman; and Kathleen Butler, Respondents.

Bankruptcy Nos. 82 B 12073–82 B 12086 (PBA).

United States Bankruptcy Court, S.D. New York.

April 22, 1983.

Weil, Gotshal & Manges, New York City, for debtors; Stephen Karotkin, New York City, of Counsel.

Anthony Z. Roisman, Washington, D.C., for respondents, Trial Lawyers for Public Justice.

Daniel Riesel, New York City, for respondents.

## DECISION AND ORDER ENJOINING RESPONDENTS FROM PROSECUTING A CERTAIN ACTION

PRUDENCE B. ABRAM, Bankruptcy Judge:

This matter involves the scope and extent of the automatic stay, and the exemptions, provided by Section 362 of the Bankruptcy Code, 11 U.S.C. § 362, which became effective when on October 27, 1982 Revere Copper Products, Inc. ("RCPI") and thirteen related corporations filed petitions for reorganization under Chapter 11 of the Bankruptcy Code. RCPI and the other debtors continue to operate their respective businesses as debtors-in-possession. RCPI operates a manufacturing facility in Rome, New York and is engaged in the business of manufacturing and selling copper and copper alloy sheet, plate, roll, strip, rod, bar, tube and shapes. RCPI is a subsidiary of Revere Copper and Brass Incorporated ("Revere"), one of the debtors. Revere and the other debtors are engaged in, among other things, the production and marketing of primary aluminum, aluminum rolling mill products, aluminum foil and extruded aluminum shapes, fabricated copper and brass mill products and Revere Ware kitchen utensils.

On November 23, 1982, without leave of the Bankruptcy Court, Hudson River Sloop Clearwater, Inc. ("Sloop") and Natural Resources Defense Council, Inc. ("Resources") (hereafter collectively "Clearwater") commenced a citizen's suit under Section 505 of the Federal Clean Water Act, 33 U.S.C. § 1365, against RCPI in the United States District Court for the Northern District of New York (82–CV–1305) (the "Northern District Action"). The relief requested in the complaint was (1) an order declaring RCPI to have violated and to be in violation of the Clean Water Act, 33 U.S.C. § 1251 et

seq.; (2) an injunction preventing RCPI from operating its Rome facility in violation of its National Pollutant Discharge Elimination System ("NPDES") permit; (3) an order directing RCPI to pay civil penalties of $10,000/day for each violation of its NPDES permit; (4) an award of costs to the plaintiffs; and (5) provision of certain monitoring rights to plaintiffs. The complaint acknowledges that RCPI had filed a Chapter 11 petition and asserts that the plaintiffs

> "chose this Defendant and several others to take enforcement action against because they were among those companies with a persistent and historic pattern of permit non-compliance and because there had been no diligent prosecution of Defendant by Federal and state authorities."

Annexed to and an integral part of the complaint was a 19-page letter dated September 17, 1982 to Revere and RCPI giving notice of alleged violations and of intent to sue in regard thereto.

The contents of this letter are material to an understanding of this dispute. The letter lists in detail the alleged violations of permit standards; except for the possibility of clerical errors, no essential dispute apparently exists as to the violations since the listing was drawn from reports filed, as required by the NPDES permit, by RCPI itself. However, it is equally plain that the alleged violations overwhelmingly occurred in 1977 and 1978. Of the 1139 listed violations, fewer than 40 occurred in 1981 and 1982. The complaint alleges that, because of the past violations, plaintiffs believe that without imposition of appropriate fines and issuance of an injunction, RCPI will continue to violate its NPDES permit.

Prior to the time an answer was due to the complaint, RCPI filed a motion in this court seeking to have Clearwater and the attorneys who signed the complaint in the Northern District Action adjudged to have committed civil contempt. RCPI also sought and obtained a temporary restraining order, since converted to a preliminary injunction, preventing the prosecution of the Northern District Action pending determination of the motion. On February 22, 1983, a hearing was had on the motion at which time oral argument was had, but no evidence taken, the matter being one of law as there are no disputed issues of fact.

■ It is Clearwater's position that its commencement of the Northern District Action was proper on the grounds that the action is excepted from provisions of the automatic stay by virtue of Bankruptcy Code § 362(b)(4) which provides:

> "(b) The filing of a petition under section 301, 302 or 303 of this title does not operate as a stay—
>
> \*    \*    \*    \*    \*    \*
>
> (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power"

Governmental unit as used in Code § 362(b)(4) is defined by § 101(21) of the Bankruptcy Code as follows:

> " 'governmental unit' means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States, a state, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government."

The allegations in the Northern District Action complaint are that Sloop is an environmental public interest membership organization incorporated under New York State's not-for-profit corporation laws. It has approximately five thousand members who reside in New York State. The organization conducts environmental research, monitoring, education and advocacy on behalf of its members. Resources is likewise a New York not-for-profit membership corporation. It has approximately forty thousand active members nationwide, of whom 5,400 reside in New York State. Resources is stated to be dedicated to the preservation, protection and defense of the environment, its wildlife and natural resources, and

actively supports effective enforcement of Federal and State implementation of the Clean Water Act on behalf of its members. Based on these descriptions, it would seem self-evident that Clearwater was not within the definition of governmental unit.

The legislative history of Code § 101(21) supports the conclusion that Clearwater does not fall within the scope of the definition of "governmental unit."

> "Entities that operate through state action such as through the grant of a charter or license, and have no further connection with the state or federal government are not within the contemplation of the definition." H.R.Rep. No. 595, 95th Cong., 1st Sess. 311 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 24 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787.

Clearwater, however, argues that in the Northern District Action it is in the position of a governmental unit and thus within the exception inasmuch as the operative provisions of the Clean Water Act authorize it to act as a "private attorney general" in commencing an action. Section 505(a) of the Clean Water Act provides in relevant part:

> "(a) Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—
>
> (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such standard or limitation, or
>
> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."

A citizen can bring suit against either the source of the violations, or against the ad-

ministrator when the administrator fails to carry out the mandates of the Act. Section 505(g) of the Clean Water Act requires the suing citizen to be a person having an interest which is or may be adversely affected. Although the citizen must assert some injury, no recovery for damages for the citizen individually is authorized. Thus, the fines and penalties sought by Clearwater would be payable to the government.[1] *See Middlesex County Sewerage Authority v. National Sea Clammers Ass'n.*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

■ The legislative history of Bankruptcy Code § 362(b)(4) indicates that the exception to the automatic stay is to be interpreted narrowly.

> "Section 362(b)(4) indicates that the stay under section 362(a)(1) does not apply to affect the commencement or continuation of an action or proceeding by a governmental unit to enforce the governmental unit's police or regulatory power. *This section is intended to be given a narrow construction in order to permit governmental units to pursue actions* to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate." (emphasis added).

124 Cong.Rec. S 17,409 (Oct. 6, 1978). If Congress had wanted to exempt this type of citizen suit from the ambit of the automatic stay, it could easily have done so. "[W]here the statute plainly expresses the will of Congress in language that does not permit or require a strained interpretation, words thereof may not be extended or distorted beyond their plain popular meaning." *Adams v. Morton*, 581 F.2d 1314, 1320 (9th Cir.1978) *cert. denied sub nom Gros Ventre Tribe of Fort Belknap Indian Reservation, Montana v. U.S.*, 440 U.S. 958, 99 S.Ct. 1498, 59 L.Ed.2d 771 (1979). Absent a clear intent to the contrary this court must presume that Congress intended to exclude from the automatic stay actions to enforce

---

1. It should be pointed out that even a governmental unit would be barred from seeking to enforce a money judgment against RCPI

obtained in an action to enforce a regulatory power. See Bankruptcy Code § 363(b)(5).

governmental police and regulatory powers only when such actions were brought by a governmental unit. There being no indication that Congress intended otherwise this case falls within the doctrine of *expressio unius est exclusio alterius. See Continental Casualty Co. v. United States,* 314 U.S. 527, 533, 62 S.Ct. 393, 396, 86 L.Ed. 426 (1942). This court holds that the exception excludes private attorney general actions.

The court notes that the authorities that Clearwater cites as supporting its position that a private attorney general suit is within the meaning of the exception contained in Code § 362(b)(4) do not in fact support its position. All of the cases cited by Clearwater differ from the instant case in one of two dispositive fashions—either they are actions brought by governmental entities or they do not involve bankruptcy.

■ Clearwater asserts one final ground as authority for it to have commenced the Northern District Action without leave of this court: 28 U.S.C. § 959. That section provides in subsection (a) that trustees, receivers or managers of any property, including debtors in possession, may be sued without leave of the court appointing them with respect to their acts or transactions in carrying on business with such property. Subsection (b) states that the trustee, receiver, manager and debtor in possession shall manage and operate the property in its possession

> "according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."

It is clear that RCPI in operating its Rome, New York plant as a debtor in possession is obligated to comply with applicable state laws. The Clean Water Act is not a state law, but a federal law. Thus, it would seem that 28 U.S.C. § 959 does not provide authorization for the Northern District Action. However, it is not necessary to rely on this technicality. The simple answer is that a plain reading of the complaint in the Northern District Action indicates that it seeks relief solely on the basis of the pre-petition conduct of RCPI. Clearly 28 U.S.C. § 959 is intended to deal with acts which occur *after* the petition is filed. *See Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 56 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). Even if somehow some portion of the complaint can be read to allege in at least some measure post-petition conduct, this court in its discretion can enjoin the action and will do so because of the thrust of the complaint.

■ Notwithstanding the commencement of the Northern District Action in violation of the stay, this court is not prepared to do more than enjoin its continuation. This court is satisfied after colloquy with counsel for Clearwater that counsel believed that as a result of the venue provisions in the Clean Water Act, 33 U.S.C. § 1365, Clearwater could only act in the Northern District and counsel apparently lacked a sufficient understanding of the bankruptcy laws to appreciate that the remedy for a person aggrieved by the stay is to seek to lift it in the bankruptcy court which action would not have been affected by the venue provisions. The court is satisfied that Clearwater was not acting in bad faith in commencing the Northern District Action, even though Clearwater was acting erroneously as discussed above, particularly in light of RCPI's obligation as a debtor-in-possession to operate in accordance with the Clean Water Act and its NPDES permit. *See In re Canarico Quarries, Inc.,* 466 F.Supp. 1333 (D.P.R.1979). While this court cannot condone ignorance as a defense, the court does take into account that the respondents have taken no action in the Northern District Action since RCPI filed its motion and have indicated a willingness to abide by the final decision in this matter. The purpose of civil contempt sanctions is remedial, rather than punitive, in that sanctions seek to obtain compliance with the court's directives. *In re Terry,* 12 B.R. 578, 581 (Bkrtcy.Ct.E.D.Wis.1981). It is within the sound discretion of the court to refuse to hold persons in contempt for a violation of the automatic stay. *In re Porter,* 25 B.R.

425, 428 (Bkrtcy.Ct.D.Vt.1982). The contempt power is an awesome one and should be reserved for actions showing a more clearly contumacious frame of mind. *In re Hurricane Elkhorn Coal Corp., II,* 19 B.R. 609, 620 (Bkrtcy.Ct.W.D.Ky.1982). *See also* the dissenting opinion in *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977).

For the reasons set forth above, the court permanently enjoins Sloop, Resources and the other respondents from continuing the Northern District Action.

SO ORDERED.