PEOPLE OF the STATE OF
ILLINOIS, Plaintiff,

v.

ELECTRICAL UTILITIES, et
al., Defendants.

No. 82 C 4828.

United States District Court,
N.D. Illinois, E.D.

April 23, 1984.

Tyrone C. Fahner, Atty. Gen. of Ill., Barbara A. Chasnoff and Philip C. Parenti, Chief, Environmental Control Div., Philip L. Willman, Asst. Atty. Gen., Chicago, Ill., for plaintiff.

Michael T. Reagan, Herbolsheimer, Lanner, Henson, Duncan & Reagan, P.C., LaSalle, Ill., for defendants.

DECKER, Senior District Judge.

## MEMORANDUM OPINION AND ORDER

The People of the State of Illinois (the State) brought this action against Electrical Utilities Company (EUC), Richard Hauser (Hauser), and Lake Shore National Bank (the Bank) as a trustee. The suit alleged that defendants violated the Toxic Substances Control Act (TSCA), 15 U.S.C. §§ 2601–2629, by dumping polychlorinated biphenyls (PCBs) on EUC's manufacturing site. After the State brought suit, EUC filed a voluntary bankruptcy petition under title 11 of the bankruptcy code, 11 U.S.C. § 101 *et seq.* The court asked the parties to brief the issue of whether the automatic stay provision in 11 U.S.C. § 362(a) requires this court to halt proceedings in this case. The court concludes that section 362(b)(4) exempts this case from the automatic stay provision.

### I. *Factual Background*

The complaint alleges that EUC and Hauser, EUC's president, spilled large quantities of PCBs on the land where EUC manufactured electrical capacitors. The Bank is the trustee of a trust that controls the land. The State contends that this spillage violated the TSCA and United States Environmental Protection Agency (EPA) regulations governing PCBs. The complaint seeks three forms of relief. The State asks that:

1. The Court enjoin the defendants, EUC and Richard Hauser, from futher disposal of PCBs at the site and require the defendants, jointly and severally, to [sic] remove the PCBs disposed of at the site in a manner approved by the State of Illinois and the U.S.E.P.A.

2. The Court order that defendants, EUC and Richard Hauser, pay all costs of studies and investigations incurred to date and/or in the future by plaintiff regarding the PCB contamination at the site as complained of herein.

3. That the Court order that the plaintiff, the State of Illinois, recover from the defendants, EUC and Richard Hauser, the cost of this action.

Complaint at 4–5.

Defendants' counsel notified the court on October 3, 1983 that EUC has filed a voluntary petition for bankruptcy under 11 U.S.C. § 101. The court now must decide whether the automatic stay provision of the bankruptcy code, 11 U.S.C. § 362(a) (section 362(a)), prevents the court from proceeding with the case.

### II. *Discussion*

Section 362(a) provides that:

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

Both sides agree that this section applies to this case and will require a stay with respect to the action against EUC unless the case fits within an exception to the rule. Section 362(b)(4) creates an exception to the automatic stay rule if a state is involved:

(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—

\* \* \* \* \* \*

(4) under section (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power[.]

Section 101(21) of title 11 includes "state" within the meaning of "governmental unit." The legislative history clarifies that this provision insulates states from the automatic stay provision when they attempt to protect their citizens from environmental

hazards. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. at 343, *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 5963, 6299 (hereinafter H.R.Rep.). "Thus, where a governmental unit is suing a debtor to prevent or stop a violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such law, the action or proceeding is not stayed under the automatic stay." *Id.*

The court finds that this case fits within this exception. This suit is the State's means of preventing further PCB pollution at the EUC site and its way of cleaning up the PCBs that may have contaminated the site. As the State notes, the Illinois Constitution establishes a public policy of promoting a healthful environment. Ill. Const. art. 11, § 1. The Illinois attorney general is the legal officer for the State with "the duties and powers ... prescribed by law." Ill. Const. art. 5, § 15. One tool that the attorney general and the State have at their disposal to promote a healthy environment is a suit under TSCA. This action is such a suit and, therefore, within the exception found in section 362(b)(4).

▬ EUC makes several innovative arguments about why the court should exclude this case from the (b)(4) exception. First, it argues that, because the State sues under the "private citizens" provision of TSCA, it cannot claim that it is a "government unit" under section 362(b)(4). As the court observed in *Warren County v. State of North Carolina*, 528 F.Supp. 276, 282–83 (E.D.N.C.1981), the state brings a TSCA suit on behalf of its citizens. The state acts as parens patriae. The parens patriae power is the power to intervene on behalf of another party who cannot protect his or her own rights. *See Mills v. Rogers*, 457 U.S. 291, 296, 102 S.Ct. 2442, 2447, 73 L.Ed.2d 16 (1982). The police power is the power to protect society in general from a harm. *Rennie v. Klein*, 720 F.2d 266, 273 (3d Cir.1983) (Judge Seitz concurring). "The two [powers] often overlap." *Rennie v. Klein*, 653 F.2d 836, 845 (3d Cir.1981), *vac'd and remanded on other grounds*,

458 U.S. 1119, 102 S.Ct. 3506, 73 L.Ed.2d 1381 (1982), *on remand*, 720 F.2d 266 (1983); *see also*, 720 F.2d at 273 (Judge Seitz concurring).

In this case, the State furthers both its parens patriae power and its police power. The State's parens patriae power gives it standing to sue under the TSCA; its police power to protect the public from PCBs gives it incentive and authority under the Illinois Constitution to utilize that standing. The private right of a citizen to obtain relief under the TSCA coincides with the State's interest in protecting its citizens from PCB pollution. The court finds nothing in the legislative history to distinguish a suit involving only a state's police power from one involving both its parens patriae power and its police power.

In *In re Revere Copper and Brass*, 29 B.R. 584 (Bankr.S.D.N.Y.), *aff'd*, 32 B.R. 725 (S.D.N.Y.1983), the court held that an environmental group was not a "governmental unit" even though it was acting to vindicate rights that the state itself was interested in protecting. The court, however, focused on the identity of the plaintiff instead of the statute creating the cause of action. *See, e.g.*, 29 B.R. at 587–88. The stay exception failed to apply because a private organization, not the state, brought the action. *Id.* If the state had brought the action, it would have been exercising its police power to protect its citizens. *See id.* at 587.

▬ Second, EUC claims that section 362(b)(4) applies only to a governmental unit enforcing its own laws. A state suing under a federal statute, it contends, is enforcing only federal police or regulatory power. Although clever, this argument ignores the spirit of the exception. The legislative history draws no distinction between a state suing under state law and one suing under federal law. The exception was designed to protect a state's ability to protect the health, safety, and welfare of its citizens. A suit under the TSCA is an attempt to protect such health, safety, and welfare.

EUC's argument also confuses a state's power with the means of implementing that power. A state has the power to protect its environment. One means of implementing that power is to bring a federal suit against violations of federal laws that safeguard the environment. If federal regulatory law preempts state regulation but permits suits by the state to police compliance with the federal law, a federal suit may be the only means of exercising the state police power.

■ EUC next assumes that the state is a governmental unit but claims that, because the suit is no more than an attempt to get a money judgment, the automatic stay provision still applies. *See U.S. v. Johns-Manville Sales Corp.*, 18 Erv't Rep. Cas. (BNA) 1177, 1181–82 (D.N.H.1982); *In re Kovacs*, 681 F.2d 454 (6th Cir.1982), *vac'd*, 459 U.S. 1167, 103 S.Ct. 810, 74 L.Ed.2d 1010 (1983), *cert. granted*, — U.S. —, 104 S.Ct. 1438, 79 L.Ed.2d 759 (1984).

Section 362(b)(5) provides an exception to the stay "of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." The legislative history emphasizes that "Paragraph (5) makes clear that the exception [in section 362(b)(4)] extends to permit an injunction and enforcement of an injunction, and to permit the *entry* of a money judgment, but does not extend to permit *enforcement* of a money judgment." H.R. Rep. at 343, 1978 U.S. Code Cong. & Ad. News at 6299 (emphasis added). "Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, *enforcement* by a governmental unit of a money judgment would give it preferential treatment to the detriment of all other creditors." *Id.* (emphasis added). A suit, however, "attempting to fix damages for violation of ... [an environmental protection] law ... is not stayed." *Id.*

The distinction between entry and enforcement of a money judgment is clear. The first is free of the automatic stay; the second is stayed. Congress allows governmental units to get money judgments in pursuit of their police power, but forces them to wait in line like all other creditors to get the judgment enforced.[1] This suit asks first for injunctive relief.[2] It also asks for the court to require defendants to reimburse the State for studies regarding the site and for the cost of this suit. The suit is not for enforcement of a money judgment or for enforcement of an injunction requiring EUC to spend money. If and when the State gets a judgment against EUC requiring it to expend resources, the State will become a creditor like those presently before the bankruptcy court. Until then, it is a governmental unit exercising its power to protect the Illinois environment. *See In re Tauscher*, 7 B.R. 918, 920 (Bankr.E.D.Wis.1981) ("[T]he language of the statute seems so clear and the intent of Congress so plainly evident.").

### III. *Conclusion*

The court finds that the automatic stay provisions of 11 U.S.C. § 362(a) fail to prevent this court from proceeding with this case. The court orders the parties to appear on Wednesday, May 9, 1984, at 10:00 A.M., for a status hearing.

---

1. This conclusion is consistent with the purpose of the stay which is "to give[] the debtor a breathing spell from his creditors ... [and] all collection efforts." S.Rep. No. 989, 95th Cong. 2d Sess. at 54, *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 5840. Without a judgment, the State fails to qualify as a creditor trying to collect.

2. Defendants claim that the request for injunctive relief is a pretext to avoid a stay because EUC is no longer operating on the site. The parties have not argued this factual issue, and the court finds that the mootness of the request is irrelevant to the motion.