In re Zenobia ELLIS, Debtor.

ILLINOIS DEPARTMENT OF PUBLIC
AID, Appellant,

v.

Zenobia ELLIS, Appellee.

No. 85 C 5742.

United States District Court,
N.D. Illinois, E.D.

Aug. 4, 1986.

Richard Grossman, James C. O'Connell, Sp. Asst. Attys. Gen., Chicago, Ill., for appellant.

Linda Spak, Spak & Associates, Chicago, Ill., for appellee.

## MEMORANDUM OPINION

GRADY, Chief Judge.

Currently before the court is the appeal of the Illinois Department of Public Aid (the "Department") from the order of the bankruptcy court enjoining it from pursuing state court proceedings against appellee-debtor Zenobia Ellis ("Ellis") and imposing attorneys' fees and costs against the Department for violating the automatic

stay provisions of the Bankruptcy Code. For the reasons stated below, we affirm.

**FACTS**

Ellis received public assistance benefits from the Department from December 8, 1978, through November 24, 1980. Brief for Appellant, Appendix A at 1. She filed a petition in bankruptcy under 11 U.S.C. §§ 1301 et seq., ("Chapter 13") on November 3, 1983. Pursuant to that petition, she filed with the bankruptcy court a "wage earner" plan (the "plan") to repay her creditors. The bankruptcy court held a hearing to confirm that plan on November 3, 1983. A meeting of creditors to confirm the plan was held on December 6, 1984. The Department apparently appeared at that meeting and objected to confirmation of the plan. According to the bankruptcy case record, on that day the Department also filed a memorandum with the bankruptcy court objecting to confirmation of the plan. (A copy of that memorandum and the basis of the Department's objections are not in the record on appeal.) The bankruptcy court confirmed the plan over the Department's objections on January 3, 1984.

On February 3, 1984, the Department filed a three-count complaint in the Circuit Court of Cook County, Illinois alleging that Ellis had received $9,662.69 in "overissuances." The complaint alleged that Ellis had breached her statutory duty to report a change in her living conditions and/or willfully concealed and failed to report that change. The complaint alternatively alleged that the Department had made an administrative error. Each count sought recovery of the overpayments.

On April 10, 1985 Ellis filed a motion with the bankruptcy court for a rule to show cause against the Department for violating Section 362(a) the automatic stay provisions of the Bankruptcy Act.[1] On April 26, 1985, the bankruptcy court found the Department in contempt and entered an order enjoining it from proceeding further in the state court action and ordering the Department to pay Ellis $26.00 in costs and $1,045.00 in attorneys' fees.[2] The order was entered on the bankruptcy docket on May 1, 1985. The Department filed its appeal on May 10, 1985.[3]

On appeal the Department argues that its state court action did not violate the automatic stay because it constituted an attempt by a governmental unit to enforce its police and regulatory power which is specifically exempted from the stay under Section 362(b)(4).[4] Section 362(b)(4) excepts from the stay:

---

1. Under 11 U.S.C. § 362(a), the filing of a bankruptcy petition operates as a stay against:
   (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code],
   (2) the enforcement, against the debtor or against the property of the estate, of a judgment obtained before the commencement of the case [under the Bankruptcy Code.]
   Ellis filed her motion under Section 362(a)(1).

2. Under 11 U.S.C. § 362(h):
   An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

3. The Department filed its appeal in a timely fashion. Under Bankruptcy Rule 9006(a), a notice of appeal from a decision of a bankruptcy judge must be filed within ten days of the date of the entry of the order or judgment. The date that the order or judgment is actually entered on the docket is the date of entry for purposes of Rule 9006(a). See Bankruptcy Rule 5003(a). Here, the contempt order was entered on the docket on May 1, 1985, and the Department's notice of appeal was filed on May 10, 1985.

4. We note that the Department has not argued that, because the order awarding fees constituted a suit against a state by one of its citizens seeking a money judgment, the assessment of fees violated the Eleventh Amendment. We have found no cases which have addressed an Eleventh Amendment claim in the context of a violation of the automatic stay provisions of the Bankruptcy Code. A number of cases have held that states may not rely on the Eleventh Amendment to object to the discharge of debts for social services previously received by debtors, however. See, e.g., *In re Glidden,* 653 F.2d 85, 89 (2d Cir.1981) *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982) (discharge of

the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power[.]

The Department relies on Section 362(b)(4)'s legislative history and subsequent case law to support its interpretation of "police or regulatory power." Alternatively, it argues that, because its state court complaint sought only entry, not enforcement, of a judgment, its actions did not violate the stay. Ellis argues that the bankruptcy court had exclusive jurisdiction over her estate. She contends that because the Department sought to recover money from her, the purpose of the state suit was to obtain an economic advantage over third parties and the state suit therefore violated the automatic stay.

## STANDARD OF REVIEW

■ The entry of a contempt order for violation of the automatic stay provisions of section 362(a) is a final appealable order in a core proceeding. 28 U.S.C. § 157(b)(1); 11 U.S.C. § 105; *In the matter of Carmen Crum*, 55 B.R. 455, 458 (Bkrtcy. M.D.Fla. 1985); *In re Indus. Tool Distributors*, 55 B.R. 746, 749 (N.D.Ga.1985); *Better Homes of Virginia, Inc. v. Budget Services Co.*, 52 B.R. 426 (E.D.Va.1985). While findings

of fact by a bankruptcy judge should not be set aside unless "clearly erroneous," Bankruptcy Rule 8013, the parties on appeal do not dispute the facts. Rather, the question is one of law and we may reach our own conclusions of law. *In re Visiting Home Services, Inc.*, 643 F.2d 1356, 1358–59 (9th Cir.1981); *Universal Mineral, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir.1981).

## DISCUSSION

■ Whenever a petition is filed under any chapter of the Bankruptcy Code, "almost all" efforts by creditors to recover on their claims against the debtor or the debtor's estate are automatically stayed pursuant to Section 362(a). R. Ginsberg, *Bankruptcy* ¶ 3002 at 3011 (1985) (hereinafter "Ginsberg"). By operation of law, the stay voids all actions taken by creditors outside of the bankruptcy court regardless of whether the creditor knew of the bankruptcy petition. *Id.* If a creditor knows of the bankruptcy proceeding and, without the bankruptcy court's permission, attempts to enforce a claim against the debtor or his estate in a forum other than the bankruptcy court, the creditor may be found in contempt. *See In re Smith Corset Shops,*

---

child support obligations owed to the state); *Matter of Crisp*, 521 F.2d 172 (2d Cir.1975) (discharge of debt owed to state for hospital services). In one case, *In re Goldrich*, 45 B.R. 514, 12 B.C.D. 729 (Bkrtcy.E.D.N.Y.1984), the court held that a former debtor in a Section 1983 action could "probably" be awarded attorney's fees, "despite the bar of the Eleventh Amendment," where he alleged that he had been denied a student loan by the state because his previous loan had been discharged in bankruptcy. 45 B.R. 514, 12 B.C.D. at 734, *citing Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). The Second Circuit ultimately reversed on other grounds, though. 771 F.2d 28 (2d Cir.1985). Nevertheless, we think language from *Hutto*, which the bankruptcy court in *Glidden* relied on, supports the view that the Eleventh Amendment does not bar imposition of attorney's fees in this case. In *Hutto*, the district court assessed fees against a state corrections department, to be paid out of the department's funds, because the department had not complied with earlier orders to remedy cruel and unusual prison conditions. Affirming, the Supreme Court noted:

[F]ederal courts are not reduced to issuing injunctions against state officers and hoping for compliance. Once issued, an injunction may be enforced. Many of the court's most effective weapons involve financial penalties. ... If a state agency refuses to adhere to a court order, a financial penalty may be the most effective means of ensuring compliance. The principles of federalism that inform Eleventh Amendment doctrine surely do not require federal courts to enforce their decrees only by sending high state officials to jail. The less intrusive power to impose a fine is properly treated as ancillary to the federal court's power to impose injunctive relief.
In this case, the award of attorney's fees for bad faith served the same purpose as a remedial fine imposed for civil contempt....

*Hutto*, 437 U.S. at 690–91, 98 S.Ct. at 2573. See also Note, Attorney's Fees and the Eleventh Amendment, 88 Harv.L.Rev. 1875, 1892 (1975).

Here, the bankruptcy court imposed attorney's fees for the Department's knowing violation of the automatic stay. See supra note 2. The order served a remedial—as well as a deterrent—purpose and therefore satisfies *Hutto*.

*Inc.,* 696 F.2d 971 (1st Cir.1982); *In re Carter,* 691 F.2d 390 (8th Cir.1982). In effect, the automatic stay forces creditors into the bankruptcy court and makes them rely on the Bankruptcy Code to enforce their claims.

Compared to Chapters 7 and 11, Chapter 13 is more circumscribed in the opportunities it presents creditors to enforce their claims against the debtor or the debtor's estate. For example, Chapter 13 creditors do not have the right to accept or reject confirmation of a plan proposed by the debtor to repay debts. They may, however, attempt to interpose several legal objections to confirmation. For example, if the creditor is secured, it might argue that the plan does not meet the liquidation or surrender requirements of 11 U.S.C. §§ 1325(a)(5)(B), (C). Unsecured creditors who meet the "priority" requirements of 11 U.S.C. § 507 may attempt to argue that the plan fails to provide payment in full over the life of the plan as required by 11 U.S.C. §§ 1322(a)(2), 1325(a)(1). Nonpriority unsecured creditors have little protection; under 11 U.S.C. § 1325(a)(4), a court can confirm a plan even if it fails to provide for repayment to these creditors. *See* Ginsberg ¶ 1008, at 1019–20 and n. 23 and cases cited therein. Finally, all creditors may argue that the plan has not been proposed in good faith under 11 U.S.C. § 1325(a)(3) or that it is not feasible under 11 U.S.C. § 1325(a)(6).

If a plan is confirmed by the bankruptcy court, the debtor must devote his or her best efforts to making the repayments required by the plan during the life of the plan. 11 U.S.C. § 1325(b). But, when all payments required by a plan are completed, the debtor is automatically discharged from:

> having to pay the unpaid balances of all claims against him or her other than long-term debts that the debtor has cured under the plan ..., claims for alimony, child support and the like, and certain post-petition debts. All other debts provided for in the plan, regardless of whether they would be dischargeable

in a Chapter 7 case, are covered by a Chapter 13 discharge. Therefore, the debtor can use Chapter 13 to avoid claims based on fraud, willful and malicious injuries to persons or property, drunk driving injuries, educational loans and the like.

Ginsberg ¶ 1008, at 1020–21 (footnotes omitted). See 11 U.S.C. § 1328(a)(1). *Cf. Lee v. Schweiker,* 739 F.2d 870 (3d Cir. 1984); *In re Neavear,* 674 F.2d 1201, 1203–04 (7th Cir.1982) (social security overpayments are dischargeable debts).

Creditors who meet the qualifications of 11 U.S.C. § 362(b) are excepted from the automatic stay, however, and may pursue their claims against the debtor or the debtor's estate using their statutory or common law remedies in a nonbankruptcy forum. The debtor or any other party wishing to stop such proceedings must file an adversary proceeding and seek an injunction from the bankruptcy court. 28 U.S.C. § 157(b)(2)(A); 11 U.S.C. § 105(c); Bankruptcy Rules 7001(7), 7065. The party seeking the injunction "must show that the injunction is not only necessary, or at least appropriate to the administration of the bankruptcy case, but that the estate will suffer irreparable harm if the injunction is denied." Ginsberg ¶ 3101, at 3020. In addition, the hardships to the debtor caused by denial of the injunction must outweigh the hardships to the creditor in granting it. *Id.*

For purposes of the Bankruptcy Code, a governmental unit such as the Department is considered to be like any other creditor and is subject to the automatic stay. *Lee v. Schweiker, supra,* 739 F.2d at 875; *In re Nashville White Trucks, Inc.,* 731 F.2d 376 (6th Cir.1984). But, when a governmental unit commences or continues an action or proceeding to enforce its "police or regulatory power," it is excepted from operation of the stay. 11 U.S.C. § 362(b)(4).

When Congress enacted the exception to the automatic stay for governmental units, it intended the exception to be construed narrowly "in order to permit governmental units to pursue actions to protect the public

health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate." 124 Cong.Rec. H11,092 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards). According to the House committee that considered Section 362(b)(4):

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such law, the action or proceeding is not stayed under the automatic stay.

S.Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5838; H. Rep. No. 95–595, 95th Cong., 2d Sess. at 343, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6299.

Most courts construing the exception have held that "the term 'police or regulatory power' refers to the enforcement of state laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court." *State of Missouri v. United States Bankruptcy Court*, 647 F.2d 768, 776 (8th Cir. 1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982); *see also* Ginsberg ¶ 3103, at 3022. Several courts have suggested that courts employ two tests to determine whether governmental proceedings constitute an exercise of police or regulatory power: the "pecuniary purpose" test and the "public policy" test. *See In re Charter First Mortgage, Inc.*, 42 B.R. 380, 382 (Bkrtcy. Ore.1984) (collecting cases); *In re Herr*, 28 B.R. 465, 468 (Bkrtcy.Maine 1983).

While it is somewhat "elusive," courts applying the pecuniary purpose test "must look to what specific acts the government wishes to carry out and determine if such execution would result in an economic advantage over third parties in relation to the debtor's estate." *In re Charter First Mortgage, Inc., supra*, 42 B.R. at 382. Generally, these courts hold that "[i]f the focus of the police power is directed at the debtor's financial obligations rather than the state's health and safety concerns, the automatic stay is applicable." *In re Sampson*, 17 B.R. 528, 530 (Bkrtcy.D.Conn.1982). Thus, a state agency acting as the assignee of wage claims by a debtor's former employees cannot file a wage earner's lien against the debtor. *Matter of Napco Graphic Arts, Inc.*, 51 B.R. 757, 764 (Bkrtcy.E.D.Wis.1985). Similarly, a state housing authority cannot evict a tenant for nonpayment of rent, *In re Gibbs*, 9 B.R. 758 (Bkrtcy.Conn.1981); a state hospital board cannot revoke a hospital's permission to build a new hospital where the primary factor in the board's decision is the hospital's insolvency, *In re King Memorial Hospital, Inc.*, 4 B.R. 704 (Bkrtcy.S.D.Fla. 1980); and a state liquor control board cannot prohibit liquor wholesalers from making credit sales to the retailer-debtor unless the debtor pays its pre-petition debts, *In re Jacobsmeyer*, 13 B.R. 298 (Bkrtcy.W.D.Mo.1981).

By contrast, courts have held that a state workers' compensation bureau may adjudicate claims of the debtor's employees for workers' compensation benefits where, based on the particular facts of the case, the adjudications did not affect the estate property, *In re Mansfield Tire & Rubber Co.*, 660 F.2d 1108, 1113 (6th Cir.1981). Also, a town may prohibit a debtor-in-possession who owned a restaurant from operating a "disco" without a license, *In re Cousins Restaurants, Inc.*, 11 B.R. 521 (Bkrtcy. W.D.N.Y.1981); a state racing board may deny a debtor's application to conduct horse racing in order to uphold the integrity of the industry, *In re Alessi*, 12 B.R. 96 (Bkrtcy.N.D.Ill.1981); and a state environmental agency may seek state court injunctive relief and request that bonds be posted to ensure that a polluting coal plant complies with the court's orders, *Commonwealth, Dept. of Environmental Re-*

sources v. Peggs Run Coal Co. 55 Pa. Cmwlth. 312, 423 A.2d 765 (1980).

Instead of the pecuniary purpose test, at least one court has attempted to apply the exception by distinguishing between those proceedings which fulfill a public policy and those which adjudicate private rights. Thus, in *In re Dan Hixson Chevrolet Co.*, 12 B.R. 917, 920 (Bkrtcy.N.D.Tex.1981), the court stayed a state motor vehicle commission from determining whether a debtor-franchisee's franchise should be revoked because of alleged violations of the franchise agreement. The court stayed the proceedings because the state commission was "seeking to adjudicate private rights rather than effectuate public policy." *Id.* at 921.

Other courts have held that suits commenced by governmental units prior to the filing of the bankruptcy petition seeking injunctive as well as monetary relief are excepted from the stay under Section 362(b)(5).[5] These courts have drawn a distinction between entry and enforcement of a judgment, allowing entry but not enforcement. *See Illinois v. Electrical Utilities*, 41 B.R. 874 (N.D.Ill.1984) (state pollution authorities could seek injunctive relief and could obtain but not enforce a judgment against a polluter); *E.E.O.C. v. Rath Packing Co.*, 37 B.R. 614, 617 (S.D. Iowa 1984) (Equal Employment Opportunity Commission could proceed with a Title VII enforcement action also seeking damages filed before the bankruptcy petition but could not seek enforcement of judgment).

Relying on the legislative history quoted *supra* at 825, which the Department characterizes as the "crux" of its case, Brief for Appellant at 4, the Department argues that the state court action constituted a valid police or regulatory action to prevent or stop a violation of fraud on the welfare system. We disagree.

First, we note that the suit filed by the Department against Ellis in no way prevented or stopped her alleged fraud on the Department. As the Department's state court complaint clearly indicates, Ellis did not receive any benefits from the Department after November 24, 1980. Brief for Appellant, Appendix A, Count I ¶ 1. The state proceeding was not commenced until February 3, 1984. At most, the Department might argue that its state suit served to stop or prevent welfare fraud by other recipients in the future. We do not think this is what Congress had in mind, though. Rather, Congress intended to except governmental actions to stop ongoing or continuing frauds or prevent them from happening in the first place. *See, e.g., SEC v. First Financial Group*, 645 F.2d 429, 437–39 (5th Cir.1981) (proper for district court to appoint receiver in SEC enforcement action "to prevent injury to ... investors and to prevent further violations of the federal securities laws).

Second, we think the Department's reliance on *Electrical Utilities* is misplaced. In *Electrical Utilities*, the state commenced an action in federal district court against a polluter seeking injunctive relief and damages. Soon thereafter, the polluter filed a petition in bankruptcy under Chapter 11. The polluter argued that the state's action was automatically stayed because it was no more than an attempt to obtain a money judgment. The court rejected the debtor's argument and allowed the pollution suit to proceed, holding that the state could obtain but not enforce a judgment against the debtor. "If and when the state gets a judgment against [the debtor] requiring it to expend resources, the state will become a creditor like those presently before the bankruptcy court." 41 B.R. at 877. The case is distinguishable, however, because it is clear that

---

5. It is important to distinguish between the exception provided in Section 362(b)(4) and the exception in Section 362(b)(5). Section 362(b)(4) excepts from the stay judicial or administrative proceedings to enforce a governmental unit's police or regulatory power that *could have been commenced before* the bank-

ruptcy petition was filed. Section 362(b)(5) excepts from the stay enforcement of a *judgment actually obtained* by a governmental unit to enforce its police or regulatory powers before the debtor filed his or her bankruptcy petition. See 11 U.S.C. §§ 362(a)(1) and (2).

the court based its conclusion on Section 362(b)(5), not Section 362(b)(4). As we noted *supra* at note 5, Section 362(b)(5) excepts actions by governmental units to enforce their police or regulatory power only where the governmental unit filed its suit before the debtor filed his or her bankruptcy petition. Here, the Department's suit was commenced after Ellis filed her Chapter 13 petition and Section 362(b)(5) is therefore inapplicable.

We also believe *Electrical Utilities* and cases like it are distinguishable on a second ground. A close reading of *Electrical Utilities* and similar cases reveals a concern that the various debtors were attempting to escape disagreeable laws or regulations by filing bankruptcy petitions. *See, e.g., E.E.O.C. v. Rath Packing, supra,* 37 B.R. at 616–17 ("the exclusive authority of plaintiff to enforce federal law and policy against discrimination would be obstructed by the escape mechanism that § 362(a) would provide if EEOC enforcement actions would be stayed on the filing of a bankruptcy petition"). Here, Ellis stopped receiving her benefits from the Department on November 24, 1980, but she waited almost three years to file her Chapter 13 petition on November 3, 1983. There was no evidence produced that she in fact filed her petition because the Department was hotly pursuing the alleged overpayments.

We find the second case upon which the Department relies, *In re Herr,* similarly distinguishable. There, the debtor filed a Chapter 7 petition and was subsequently notified by the state unemployment agency that he had received overpayments. After an initial administrative proceeding, it was determined that the debtor had indeed received overpayments and the state bureau disqualified him from receiving benefits for six months. In addition, it was determined that he had received $312.00 in overpayments. The debtor eventually sought and was granted a preliminary injunction from the bankruptcy court prohibiting the state bureau from taking any administrative actions to recover the overpayments. The bankruptcy court subsequently reversed itself, however, and denied the debtor a permanent injunction, holding that Section 362(b)(4) excepted the administrative proceedings as an exercise of the state's police or regulatory power. Relying on the legislative history quoted *supra* at 825, the bankruptcy court held that the administrative proceeding was an action to stop a violation of Maine's fraud law and an attempt to fix damages for that violation. 28 B.R. at 469.

We think *In re Herr* is distinguishable, though, because it appears the debtor continued receiving or at least continued to be eligible to receive unemployment benefits during the bankruptcy proceedings. This apparently is why the state bureau disqualified the debtor from receiving benefits for six months. Therefore, the case represents an effort to stop a continuing violation of state fraud laws.[6] Here, as we previously

---

**6.** Moreover, we think *Herr* was wrongly decided because it is clear that the state, by instituting the administrative proceeding to recover the overpayments, was attempting to improve its position in the debtor's property with respect to other creditors. In essence, it was attempting to convert itself from a general unsecured creditor to a form of judgment creditor. The very purpose of the automatic stay is to force parties into the bankruptcy court to determine their rights as of the time the debtor filed his or her bankruptcy petition. This has been recognized by a line of cases—ignored by *Herr* and the Department—holding that the Social Security Administration must recover overpayments through the bankruptcy process, not through separate administrative proceedings under which the government deducts the overpayments from current benefits. See, e.g., *Lee*

*v. Schweiker,* 739 F.2d 870, 876 (3d Cir.1984); *In re Neavear,* 674 F.2d 1201 (7th Cir.1982); *In re Hawley,* 23 B.R. 236 (Bkrtcy.E.D.Mich.1982); *In re Rowan,* 15 B.R. 834 (Bkrtcy. N.D.Ohio 1981) *aff'd,* 747 F.2d 1052 (6th Cir.1984); *In re Howell,* 4 B.R. 102 (Bkrtcy.M.D.Tenn.1980). As the Third Circuit noted in *Lee:*

> Social welfare payments, such as social security, are statutory "entitlements" rather than contractual rights. The purpose of these payments is to provide income to qualifying individuals. Although the paying agency can ordinarily recover overpayments, just as creditors can ordinarily obtain payments from a debtor's future income, the Bankruptcy Code protects a debtor's future income from such claims once a petition has been filed, and the SSA violated the automatic stay in continuing

noted, the alleged fraud stopped almost three years before Ellis filed her Chapter 13 petition. Thus, the Department cannot fit its state court suit into Section 362(b)(4)'s exception for actions to stop continuing fraudulent activities. *See supra* at 826.

To summarize, the record shows that the Department learned of Ellis' overpayments when she listed her debt to the Department in her plan. April 24, 1985 Transcript of Proceedings at 5. The Department appeared at the hearing held to confirm the plan submitted by Ellis. Not satisfied with the result, the Department then sought relief from state court. Clearly the Department was attempting to assert what it viewed as its financial rights in the debtor's estate; the Department's interest was pecuniary. By doing so the Department may have wanted to send a clear signal to persons who might attempt to cheat the welfare system. This desire is understandable, but the Department, like any other creditor in a bankruptcy proceeding, must avail itself of its bankruptcy remedies. While creditor remedies are admittedly limited in a Chapter 13 proceeding,[7] the Department could have appealed the finding of the bankruptcy court that Ellis' wage earner plan was proposed in good faith. *See In re Rimgale*, 669 F.2d 426, 431–32 (7th Cir.1982) (nonexclusive listing of factors to be used in determining whether debtor proposed plan in good faith). *See also* Ginsberg, ¶ 14,404, at 14,041. Or, the Department on appeal could have attempted to show that the plan was not feasible. Finally, the Department might have filed a motion with the bankruptcy court to revoke confirmation of the plan on the basis that it was obtained by fraud. 11 U.S.C. 1330(a). If the bankruptcy court had so found, it

could have converted the petition to one under Chapter 7 and Ellis' debt to the Department would not have been subject to discharge. *See* note 7 *supra*. The Department pursued none of these options. Instead, it attempted to advance its pecuniary interest by circumventing federal bankruptcy jurisdiction. It therefore violated the automatic stay provisions of Section 362(a)(1) and the bankruptcy court properly imposed attorney's fees and costs against the Department under Section 362(h).

## CONCLUSION

The order of the bankruptcy court holding the Department in contempt and imposing fees and costs under Section 362(h) is affirmed.

---

to withhold part of Lee's benefits after she had filed her petition.
739 F.2d at 876.

**7.** As noted supra at 824, once a Chapter 13 debtor completes all payments provided for in the plan, all debts scheduled or listed in the plan are discharged. By comparison, an individual Chapter 7 debtor cannot obtain a discharge for debts based on the debtor's "fraud, false pre-

tenses, misrepresentation or based on a false financial statement." 11 U.S.C. § 523(a)(2). Courts have noted this distinction and "have made it clear that the fact that the debtor is using Chapter 13 to get out of debts the debtor cannot get out of in Chapter 7 is a factor to be considered in determining whether the debtor's use of Chapter 13 is in good faith." Ginsberg ¶ 14,504 at 14,059.