**RENT-A-TAINMENT, INC./MAIL N' THINGS, Appellant,**

v.

**UNITED STATES of America, on Behalf of its Agency, the UNITED STATES POSTAL SERVICE, Appellee.**

Civ. A. No. 90–15–NN.

United States District Court, E.D. Virginia, Newport News Division.

May 23, 1990.

Michael Patrick Murray, Leslie W. Lickstein, Falls Church, Va., for appellant.

Anita K. Henry, Asst. U.S. Atty., U.S. Dist. Court, Norfolk, Va., for appellee.

## OPINION AND ORDER

REBECCA BEACH SMITH,
Bankruptcy Judge.

This matter is before the court on appeal from a final order, dated January 2, 1990, of the United States Bankruptcy Court for the Eastern District of Virginia. The appellant contends that the bankruptcy court erred in granting summary judgment to the United States Postal Service (hereinafter referred to as "Postal Service"). The bankruptcy court held that the Postal Service was exercising its police and regulatory powers in attempting to terminate its contract with appellant and therefore was not subject to the automatic stay pursuant to 11 U.S.C. § 362(b)(4). Because a material fact is in dispute, the case is being remanded to the bankruptcy court with directions to determine the facts in issue and to then evaluate whether the Postal Service is exempt from the automatic stay pursuant to Section 362(b)(4) in light of those findings and the law set forth in this Opinion.

### A. Background

On March 10, 1988, the Postal Service awarded Rent–A–Tainment, Inc./Mail N' Things (hereinafter referred to as "debtor") a contract to operate a "contract postal unit" at the Oyster Point Business Park in Newport News, Virginia. The debtor's sole compensation for operating the postal unit would be a nominal annual fee of $100. A contract postal unit is a post office. With the exception that it is operated by persons who are not Postal Service employees, a contract postal unit offers the same services as that of an ordinary post office. The postal unit operated by the debtor provided several services, including: sale of stamps, stationery, and money orders; handling of domestic mail; and handling of first class international mail.

In December, 1988, Newport News Postmaster Walter Neilson received a complaint from a customer who alleged that a package she had mailed via United States Mail at the postal unit operated by the debtor was delivered instead by United Parcel Service (hereinafter referred to as "UPS"). As a result of this complaint, the United States Postal Inspection Service conducted an investigation which revealed that the debtor was misappropriating Postal Service funds and committing fraudulent acts relating to its contract with the Postal Service. Specifically, the investigative report indicated that the debtor would charge customers the Postal Service rate to mail packages but it would instead send them with UPS at a lower rate and keep the difference between the amount paid by the customer and the amount charged by UPS. Postmaster Neilson received the results of this report in May, 1989.

By letter dated May 30, 1989, Postmaster Neilson advised the debtor that their con-

tractual agreement was being withdrawn and cancelled due to the irregularities discovered in the investigation. On May 30, 1989, the Postal Service physically closed down the postal unit by removing all Postal Service property from the debtor's premises. The actions of the Postal Service on May 30, 1989, did not legally terminate the agreement between the parties, however, because the contract provided that only the contracting officer, Mr. Keith Utley, Jr., could effectively terminate the contract on behalf of the Postal Service. On May 31, 1989, the debtor sought a temporary restraining order to prevent termination of the contract by the Postal Service. The debtor filed its motion in bankruptcy court because it had filed a petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., on March 9, 1989. Since the contract stated that any claims and disputes must be resolved pursuant to the Contract Disputes Act of 1978, the bankruptcy court concluded that it lacked jurisdiction to address the claim and it dismissed the debtor's motion. *In re Rent–A–Tainment, Inc./Mail N' Things*, Bankruptcy Case No. 89–00292–NN–B, Order at 2 (June 14, 1989).

On June 30, 1989, the debtor filed an administrative claim with the contracting officer, pursuant to the requirements of the Contract Disputes Act of 1978, alleging that it should be compensated due to the Postal Service's attempted termination of the contract. The debtor claims that the postal unit attracted "substantial numbers" of customers to its place of business generating three hundred dollars per day in income over and above normal sales. *Rent–A–Tainment, Inc./Mail N' Things v. United States*, Civil Action No. 90–15–NN, Opening Brief of Appellant at 5 (Mar. 27, 1990) (hereinafter referred to as "Appellant's Brief"). On September 25, 1989, the Postal Service moved for relief of the bankruptcy court's automatic stay pursuant to the debtor's pending Chapter 11 proceeding, in order that the Postal Service could properly terminate the contract. At that time, the Postal Service alleged that its actions on May 30, 1989, were excepted from the automatic stay pursuant to 11

U.S.C. § 362(b)(4) which permits the commencement or the continuation of an action by a governmental unit to enforce the governmental unit's "police or regulatory powers" in spite of an automatic stay. The Postal Service explained that in order for the Postal Service Board of Contract Appeals to assume jurisdiction of the debtor's June 30, 1989, administrative claim, the Postal Service would need to properly terminate the contract in accordance with the applicable contractual provisions.

On October 2, 1989, the debtor brought a claim for damages in the bankruptcy court, pursuant to 11 U.S.C. § 362(h), against the Postal Service for allegedly violating the automatic stay provision. In response, on October 23, 1989, the Postal Service moved for summary judgment on its claim of relief from the stay and for dismissal of the debtor's claim for damages. The bankruptcy court addressed the Postal Service's September 25th motion and the debtor's October 2nd motion at a hearing conducted on November 22, 1989.

At the November 22nd hearing, the bankruptcy court advised that "the basic issue [in this case] is whether relief from stay is even required." *In re Rent–A–Tainment, Inc./Mail N' Things*, Bankruptcy Case No. 89–00292–NN–B, Transcript of Proceedings at 15 (Nov. 22, 1989) (hereinafter referred to as "Tr."). It concluded that the Postal Service is a legitimate monopoly, that the Postal Service was exercising its police and regulatory powers in its dealings with the debtor and, therefore, that relief from the stay was not required, that no violation of the stay had occurred, and that there were no grounds for damages. Tr. at 16. The court stated: "I just think it's a police and regulatory matter." Tr. at 16.

On January 2, 1990, the bankruptcy court entered a final order denying the "damages sought by the debtor pursuant to 11 U.S.C. 362(h)" and concluding "that the attempted termination of the applicable contract by Postmaster Walter Neilson on or about May 30, 1989 was not subject to the automatic stay of this Court." *In re Rent–A–Tainment, Inc./Mail N' Things*,

Bankruptcy Case No. 89–00292–NN–B, Order at 2 (Jan. 2, 1990). No reasons for this conclusion were stated in the Order, and, in fact, the reasons that followed in the paragraph were specifically deleted by the bankruptcy court. *Id.* The debtor then noted this appeal from the January 2, 1990, final order of the bankruptcy court, which in effect granted the Postal Service's Motion for Summary Judgment and Motion to Dismiss filed October 23, 1989, thereby giving the Postal Service relief from the automatic stay, and denied the debtor's motion for damages for violation of the automatic stay filed October 2, 1989.

### B. Legal Analysis

Upon the debtor's filing of its petition under Chapter 11, the automatic stay provisions of Section 362 of the Bankruptcy Code, 11 U.S.C. § 362, went into effect by operation of law. Section 362(a)(1) automatically stays the commencement of any action or proceeding against the debtor that could have been commenced before the petition was filed. The parties do not dispute that the Postal Service's actions in seeking to terminate its contract with the debtor are covered by the language of Section 362(a)(1). The Postal Service asserts, however, that its actions are excepted from the automatic stay by Section 362(b)(4).

Section 362(b)(4) provides that the filing of a petition in bankruptcy "does not operate as a stay—under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." There is no question that the Postal Service is a governmental unit. Thus, the only question raised on appeal is whether the bankruptcy court erred in granting summary judgment on the ground that the Postal Service's May 30, 1989, attempt to terminate its contract with the debtor was an action to enforce its police or regulatory power, thereby excepting the action from the operation of the automatic stay under 11 U.S.C. § 362(b)(4).[1] The court at this

juncture does not address, and indeed it would be inappropriate for the court to address, the propriety of the measures taken by the Postal Service to terminate the contract. The bankruptcy court held that it lacked jurisdiction to reach the merits of this claim and any other disputes arising under the contract since the parties agreed to resolve such matters pursuant to the Contract Disputes Act of 1978. *In re Rent–A–Tainment, Inc./Mail N' Things,* Bankruptcy Case No. 89–00292–NN–B, Order at 2 (June 14, 1989). Neither party has appealed this decision.

The courts have applied two similar tests for determining whether action taken by a governmental unit constitutes an exercise of that unit's "police or regulatory powers": the pecuniary purpose test and the public policy test. *See, e.g., In re Herr,* 28 B.R. 465, 468–69 (Bankr.D.Me.1983). The pecuniary purpose test is based on the following language from the legislative history of this section:

> [S]ection [362(b)(4)] is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.

124 Cong.Rec. H11,092 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 6436, 6444–45.

House and Senate reports provide the following guidance for determining which types of governmental actions are excepted:

> [W]here a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.

---

**1.** The disposition of the other motions before the bankruptcy court, namely the debtor's motion for damages for violation of the stay, and the Postal Service's motion to dismiss the claim

for damages all flow from the granting of the Postal Service's motion for summary judgment on its claim for relief from the automatic stay.

S.Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5838; H.R.Rep. No. 595, 95th Cong., 2d Sess. 343, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6299.

Thus, with respect to the pecuniary purpose test, the court's focus is on whether the governmental action is directed "primarily" to the "protection of the [government's] pecuniary interest in the debtors' property and not to matters of public safety and health." *In re State of Missouri,* 647 F.2d 768, 776 (8th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982); *see NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 942 (6th Cir.1986); *In re Herr,* 28 B.R. 465, 468 (Bankr.D.Me.1983); *In re Sampson,* 17 B.R. 528, 530 (Bankr.D.Conn.1982). Only if the government's actions are motivated primarily by pecuniary concerns is it then subject to the automatic stay.

The public policy test, on the other hand, distinguishes between those governmental proceedings which are initiated primarily to further a public policy or interest and those which are initiated primarily to vindicate private rights. *In re Dan Hixson Chevrolet Co.,* 12 B.R. 917, 920 (Bankr.N.D.Tex. 1981). Only governmental action undertaken primarily to further a public policy concern is excepted from the automatic stay pursuant to Section 362(b)(4). It is

clear that regardless of which test is applied, courts must engage in a very fact-specific inquiry in order to determine the primary motivation for the governmental unit's actions.[2]

Appellant strongly urges this court to reverse the bankruptcy court's decision because the evidence does not support the conclusion that the Postal Service was exercising its police and regulatory powers in attempting to terminate the contract. Further, appellant contends that because the bankruptcy court's decision lacks both specific factual findings and analysis of the tests relevant to this exception, an appellate court cannot effectively review the correctness of the bankruptcy court's decision.

During the November 22, 1989 hearing, the bankruptcy court held that relief from the automatic stay was not required and stated the following:

I think the basis issue is whether relief from stay is even required. Relief from stay is an equivalent of an injunction. It goes into effect immediately upon the filing of the case. Now, Congress has said the code does provide an exemption. Otherwise, people could use [the automatic stay], as a defense, as a cover, as a cloak to prevent police and regulatory matters, even to stop criminal trials. The question, then, is is this a police and regulatory matter. It's clear, and I think

---

**2.** During oral argument before this court on April 11, 1990, and in its brief, the Postal Service asserted that protection of the public, under either of the tests relevant to this area, does not have to be the *sole* motivation for a governmental unit's actions just as long as it is *one* reason for such action. *Rent–A–Tainment, Inc./Mail N' Things v. United States,* Civil Action No. 90–15–NN, Postal Service's Memorandum in Support of the Bankruptcy Court Decision Reached Below at 16 (Mar. 28, 1990) (hereinafter referred to as "Appellee's Brief"). In support of its argument, the Postal Service relies on two cases which hold that the exception to the automatic stay in Section 362(b)(4) should be construed broadly. *See Matter of Commonwealth Oil Refining Co.,* 805 F.2d 1175, 1184 (5th Cir.1986), *cert. denied,* 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987) (case law supports court's conclusion that Section 362(b)(4) should be construed broadly and that its application is not limited to only those instances where an urgent public necessity can be shown); *Penn Terra Ltd. v. Dept. of Envtl. Resources,* 733 F.2d 267, 273

(3d Cir.1984) (in order to prevent the exception to the automatic stay from preempting state laws enacted to protect the public interest, the court found that "the exception to the automatic stay provision contained in subsections 362(b)(4) and (5) should itself be construed broadly, and no unnatural efforts be made to limit its scope."). The Postal Service, however, *does not dispute that the weight of authority favors the application of either the pecuniary purpose test or the public policy test in determining the primary impetus* for the governmental unit's actions. Appellee's Brief at 16. These tests are consistent with the Postal Service's position that a concern for the public interest does not have to be the exclusive reason for the government's conduct since they require a finding only as to *the primary motivation* for the government's actions. However, the tests are inconsistent with the Postal Service's position that a desire to protect the public must merely constitute *a* reason for the government's actions, a position with which this court disagrees.

the Court can take judicial notice of the fact that the United States Postal Service has a monopoly on the Postal Service, an official Postal Service of the United States Government. It can, apparently, enter into contracts for agents and others to be a part of that, but this Court is of the opinion that because of the status of that, that basically you do have here a police and a regulatory matter, and that relief from stay is not required to police the granting of Postal Service's and to withhold.... I just think it's a police and a regulatory matter. It's a good issue that sometimes ought to be settled by a higher court.

Tr. at 15–16. Even the Postal Service, while strenuously urging this court to affirm the decision below, concedes that one cannot ascertain from either the bankruptcy court's order of January 2, 1990, or from the record what facts were relied upon by the court to reach its conclusion that the Postal Service was exempt from the stay. Appellee's Brief at 2.

The bankruptcy court did not engage in any review on the record of the evidence submitted by the parties and then indicate the material facts not in dispute prior to granting the Postal Service's Motion for Summary Judgment. Nor did the bankruptcy court make any analysis of the legal tests relevant to the exception to the automatic stay. Importantly, there are facts in issue which need to be determined by the bankruptcy court in order to draw legal conclusions in the case. And, the principal conflict between the parties on appeal centers on the Postal Service's reasons for attempting to terminate its contract with the debtor on May 30, 1989. The Postal Service, relying on the affidavits of Postmaster Walter Neilson and Keith Utley, Jr., the contracting officer, asserts that the attempted termination of the underlying contract was to protect the public at large from the fraudulent and criminal activities of the debtor. Appellee's Brief at 19–20. The debtor, relying on the same affidavit of Postmaster Neilson, argues that the Postal Service was motivated instead by a desire to protect postal funds and property. Appellant's Brief at 17.

Specifically, Postmaster Neilson, in his affidavit, states:

> At the time when I sought to terminate the contract between the United States Postal Service and Rent–A–Tainment, Inc., I believed that my actions were justified by the investigative report which I had received, which alluded to conduct that was not in the economic interest of the Postal Service and/or to reported conduct that was fraudulent and/or criminal as reported.

In re Rent–A–Tainment, Inc./Mail N' Things, Bankruptcy Case No. 89–00292–NN–B, Affidavit of Postmaster Walter Neilson at 2 (Nov. 18, 1989).

Thus, at minimum, this evidence reveals a factual conflict between the parties over whether the Postal Service's primary purpose in attempting to terminate the contract was the prevention of fraud on the American public or the protection of the Postal Service's monetary interests. Under both the pecuniary purpose test and the public policy test, the bankruptcy court had to find that the Postal Service was acting primarily to protect the public interest in order to exempt it from the automatic stay pursuant to Section 362(b)(4). The bankruptcy court, however, made no specific findings and provided no analysis on this essential point. Moreover, the Affidavit of Postmaster Neilson clearly reflects two reasons for the termination of the contract, without any indication of the primary reason for the attempted contract termination, thereby leaving a material fact in dispute which must be resolved by the trial court through further proceedings. As such, summary judgment under Rule 56 of the Federal Rules of Civil Procedure is inappropriate because a material fact is in dispute.

Accordingly, it is ORDERED that the bankruptcy court's final order of January 2, 1990, excepting the Postal Service's attempted termination of the applicable contract on May 30, 1989, from the automatic stay pursuant to Section 362(b)(4) be VACATED, and that the case be REMANDED to the bankruptcy court for fact-finding proceedings and disposition in accordance with this Opinion.

The Clerk is DIRECTED to send a copy of this Opinion and Order to all counsel and to the bankruptcy court.